James C. O’Brien, J.
This is an action under article 15 of the Beal Property Law to quiet title to a strip of land 30 feet wide, running across Lot 17 through Lot 23 of the Forest Lawn Subdivision, which is on the southerly shore of Lake Ontario, in the Town of Webster, Monroe County, New York.
Plaintiff in 1920 purchased from C. Storrs Barrows a cottage on Lot 24 of this tract. He subsequently acquired, by various deeds, title to the lots on either side, i.e., Lots 23 and 25.
The plaintiff’s contention is that he has title in fee to this 30-foot strip and if it be found that he does not have such title, he at least has an easement over it for a roadway, for access to his cottage on Lot 24 (which he has now made into a “ year-round ” home); that the defendants have improperly and unlawfully prevented his using this strip as a way of access to his home on Lot 24 and that he has no means of access to his property other than the use of this strip and he seeks a determination that he is the owner of the strip or that in any event he has an easement in it for a roadway. We shall first consider the question of title.
Horace Gr. Pierce, the original subdivider of the tract, conveyed on May 14, 1889, certain land in the tract to the Borne, Watertown and Ogdensburg Bailway Company. This was a rectangular parcel of land being parts of Lots 17, 18, 19, 20, 21, 22 and 23 of the Forest Lawn Tract, as such was laid out in Liber 7 of Maps at page 82 in Monroe County Clerk’s office. The deed described the parcel as approximately 100 feet of the southern *478 portion of the lots involved in the conveyance, i.e., the conveyance covered a parcel 100 feet wide from north to south. The premises covered by the deed are clearly set forth in Exhibit 1. After a description of the property conveyed, the deed contains this language: “ excepting and reserving a strip 30 feet wide along the east, north and west sides of the premises conveyed, for a roadway”. The conveyance was subject to conditions in the original deed of the property to Horace G. Pierce on April 1, 1889.
The condition referred to was that the parties to the deed, or any further owners of the lots, should have a right to use the roadway, as laid out on the map on file in Monroe County Clerk’s office, except that the roadway might be changed at the point where the railroad station may be located. It was apparently contemplated by Pierce and the Railway Company that it would (and it subsequently did) erect a station upon the land conveyed.
It seems clear from the language in the deed to the railroad that the 30-foot strip with which we are concerned was in some way connected to said roadway development if that should prove necessary.
The first problem arising is to determine what was conveyed to the railroad company by the deed from Pierce. Clearly the most southerly 70 feet of the parcel was conveyed to the railroad in fee. The words “ excepting and reserving ” as used in the deed are ambiguous and in fact seem to be mutually exclusive.
At common law it was held that these words could not convey an easement. (Durham & S. R. R. Co. v. Walker, 2 Q. B. 940; Wickham v. Walker, 7 M. & W. 75; Corp. of London v. Riggs, 13 Ch. Div. 798.)
In the United States, however, the historical significance of this language has been lost sight of and it is used almost interchangeably. Moreover, the courts, without regard to the particular terms used in the conveyance, construe the language as an exception or reservation according to the character of the right intended to be created. (Terry v. Tinsley, 140 Va. 240; Haldiman v. Overton, 95 Vt. 478; White v. New York & New England R. R. Co., 156 Mass. 181; Hagerty v. Lee, 54 N. J. L. 580; Sloan v. Lawrence Furnace Co., 29 Ohio St. 568.)
Where the right or privilege is one arising out of the transaction that would not exist had the transaction not taken place, it is a proper subject of a reservation. Likewise privileges retained are frequently considered as being within the scope of a reservation rather than an exception. (York Haven Water & Power Co. v. York Haven Paper Co., 201 F. 270; Childs v. Boston *479 & Maine R. R., 213 Mass. 91.) Since ownership is aggregate, the grantor who retains a privilege in property conveyed (e.g., a right to a roadway) is merely holding back or excepting from the aggregate the privilege. The privilege was included in the former ownership and his conveyance simply provides that it shall not pass to the grantee. Thus it seems that an easement retained comes properly within the scope of an exception or reservation in the United States. (Grafton v. Moir, 130 N. Y. 465; Simpson v. Boston & Maine R. R. Co., 176 Mass. 359; Kister v. Reeser, 98 Pa. 1; Chappell v. New York, New Haven & Hartford R. R. Co., 62 Conn. 195.) Accordingly an easement can be found in the circumstances before us here. However, it must be remembered that this is not necessarily found as a result of common law as modified by the decisions in the United States. In the final analysis one must look to the intent at the time of granting to determine what in fact was conveyed. It seems clear from the facts in this ease that Pierce intended to convey the full 100 feet to the railroad, but to impose upon it an easement for himself and future grantees for a 30-foot roadway should such a roadway prove necessary.
If Pierce had intended to retain in himself the fee of the 30-foot strip, rather than an easement only, he could have and probably would have conveyed to the railroad a strip only 70 feet wide.
In 1921 the plaintiff leased from the New York Central (successor to the Rome, Watertown and Ogdensburg Railway) a parcel (on the southerly part of Lot 17) on which to build a garage in which to house his car, and he did build such a garage. In 1933 the plaintiff negotiated with the New York Central Railroad for the purchase of the entire railroad site. The deed, at the request of the plaintiff, was given to one Gertrude Murray, a friend of the plaintiff, at about that time, and in 1941 she deeded the property to the plaintiff who withheld recording of the deed (for some reason best known to himself) until 1962. The deed from the railroad to Gertrude Murray and from Gertrude Murray to the plaintiff, used the same language, including “ excepting and reserving”.
In 1958 the plaintiff allegedly borrowed $2,400 from his friend, one Quinlan, and gave to Quinlan, as collateral security for the loan, a deed to the entire railroad station site, i.e., the land previously deeded by the railroad to Murray and by Murray to plaintiff. This deed also was withheld from recording by Quinlan until 1962. Shortly thereafter, although according to the plaintiff the loan has not been repaid either in whole or in part, Quinlan conveyed to the plaintiff the 30-foot strip with *480 which we are concerned, without any consideration being paid to Quinlan therefor by the plaintiff.
It is obvious that the railroad could convey only what it had and it is equally obvious that it conveyed all that it had to Gertrude Murray and this conveyance was subject, I conclude, to an easement of 30-foot width for roadway purposes. Concededly no roadway was ever constructed upon this 30-foot strip. (On one occasion an attempt to build a roadway was made. In 1953 the plaintiff made such an effort. He brought in dirt and dumped it on the strip at the south part of Lot 17 and brought in bulldozers to level it out. The defendants strenuously objected, threatened him with arrest if he persisted, and the plaintiff withdrew). We now consider the problem as to what has happened to this 30-foot easement.
Earlier I used the words “ easement for a roadway if necessary ”, and I believe that this was the true intent in light of the exception and reservation as well as conditions set forth in the deed to Horace Pierce. No roadway was ever constructed by Mr. Pierce. He in fact conveyed the various lots to the various grantees over the years, and some of these lots were conveyed more than once. At present the defendants John Lynn O’Brien and his wife Jane own Lot 17 of the tract; defendants Thomas J. O’Brien and his wife own Lots 18,19, 20, 21 and 22 of the tract. These defendants are in the direct line of title from Horace Pierce.
The evidence indicates that a house was built on Lot 17 more than 20 years ago and another house was built on parts of Lots 19 and 20 more than 20 years ago.
The house on Lot 17 was constructed into the 30-foot strip as was part of the house on Lot 19, and on Lot 17 there is a sidewalk and steps into the strip. The house on Lot 19, which, during his lifetime, was owned and occupied by Smith O’Brien, parent of the two male defendants, overhung the strip.
Moreover the 30-foot strip was used as a back yard for these houses. The children played there; they had a tent for play and there were picnics on the strip; the lawn was maintained in these back areas; a large masonry fireplace was built on the 30-foot strip; a large rock garden projected into the strip; cars would be pulled up off the road into the general area of the southerly part of Lot 17 and the occupants of these properties, 17 and 19, would then walk along a path to their various homes. This whole situation has existed for many years, probably 40 years or thereabouts. As stated, no roadway was ever placed therein. At some point, therefore, this easement was abandoned by Pierce and his successors in title. While mere nonuse *481 of an easement will not alone suffice to constitute its abandonment as such, nonuse coupled with acts on the part of the owner of the dominant land showing an intent to abandon such easement permanently establishes abandonment. (Albanese v. Dominianni, 281 App. Div. 768; Norris v. Hoffman, 133 App. Div. 596, affd. 197 N. Y. 578; Carman v. Hewitt, 105 N. Y. S. 2d 239. See, also, 17 N. Y. Jur. 381.)
The easement originally was given for the construction of a roadway if necessary. Neither Pierce nor the grantees, nor any of them, ever constructed a roadway thereon and in fact built their houses to some extent upon the area that was reserved for a roadway and they planted trees therein and constructed a fireplace, rock garden and hedges upon the easement.
The plaintiff, himself, planted a row of poplar trees in the southerly part of Lot 17, almost directly in the middle of the easement, and at a point westerly of the fireplace planted whole truckloads of trees in the form of a grove, directly across and in the 30-foot strip.
It seems to me that these acts on the part of the plaintiff, his predecessor in title and the defendants, all clearly show an intent not to use this property, the 30-foot strip, for a roadway, and these acts are completely inconsistent with the use of the property as such roadway. Therefore, the 30-foot strip, I find, has been permanently abandoned. This leaves the railroad the fee owner of the entire 100-foot parcel without a dominant interest attaching.
The same acts which on the part of the defendants showed their abandonment of the easement, also constitute acts of adverse possession. They were open and hostile and the property has been cultivated and improved in the usual manner consistent with the type of property in the area, and has been protected by a substantial enclosure. Certainly the building of homes into the property qualifies and is consistent with a finding of adverse possession.
When the said lots in question were conveyed to the defendants and their predecessors, they all assumed that the 30-foot strip in question was included in the conveyance. I believe that they were mistaken but in my view there was sufficient ambiguity in the original deed to the railroad to warrant a conclusion in good faith that the 30-foot strip had not been conveyed to the railroad but had been excepted from the conveyance. Therefore I find that there existed another necessary basis of defendants ’ claim to adverse possession, i.e., a written instrument in reliance upon which their acts of adverse possession were made. Since the defendants and their predecessors used this property as *482 homes and as Summer cottages for considerably more than the prescribed period, I conclude that they obtained the same by adverse possession under a written instrument. (See Ramapo Mfg. Co. v. Mapes, 216 N. Y. 362; Miller v. Long Is. R. R., 71 N. Y. 380.)
The plaintiff claims that since the properties of the defendants were used solely as Summer residences until recent years (1946 or 1947) that possession was not continuous, the cottages during the earlier period not being occupied continuously during the Winter months. However the case law seems to hold that the use required by adverse possession statutes is in fact that for which the property was intended to be us.ed and that, therefore, possession of a Summer cottage during a Summer period fulfills the requirements of adverse possession. (Van Valkenburg v. Lutz, 304 N. Y. 95; Monnot v. Murphy, 207 N. Y. 240.)
When the plaintiff secured his deed through Gertrude Murray from New York Central, it was already burdened with the adverse possession previously mentioned and plaintiff’s ownership of the property with these invasions perpetuated the adverse possession.
By reason of his deed of the railroad station property to Frank Quinlan, to secure the $2,400 loan allegedly made by Quinlan to plaintiff, plaintiff claims that he now has no access to his property. Assuming, for the purposes of this memorandum, that the plaintiff’s story is true, viz., that his deed to Quinlan was made in good faith and to secure this loan (although there are some peculiar circumstances about the matter) I feel that the plaintiff’s contention that he has no access to his property is not tenable. I inspected the premises at the time of the trial. It seems to me that the plaintiff’s residence on Lot 24 is of a very considerable value, as is the vacant railroad site which he owns, and neither is incumbered. It seems perfectly apparent that if the plaintiff wishes to do so, on the security of this property or such other property as he owns and such liquid assets as are in his possession, he could redeem the railroad station site from the Quinlan deed because it is in fact, if plaintiff’s story is true, simply a mortgage and the plaintiff would have no trouble, in my opinion, in raising considerably more on his property than would be necessary to pay Quinlan and secure a reconveyance of the property.
If plaintiff be granted the right to build a roadway, the situation which has peaceably existed for approximately 40 years will be disrupted with consequent exceeding unpleasantness to the defendants. To permit this would be inequitable in view *483 of the fact that plaintiff has or can have convenient access to his cottage without this drastic change.
I accordingly conclude that the title to Lot 17, including the 30-foot strip in question, is in John Lynn O’Brien and his wife, Jane M., and the title to Lots 18 through 22, including the 30-foot strip, is in Thomas J. O’Brien and his wife, Elinor Gregg O’Brien, and that title to Lot 23, including the 30-foot strip, is in the plaintiff, Thomas Sackett.
The complaint should be dismissed, with costs.
A proposed judgment consistent with this decision and the findings therein included, may be presented for signature by the attorney for the defendants. Any such judgment should bear upon its margin the written approval as to its form, signed by counsel for the plaintiff. If such approval cannot be secured, form of the judgment may be settled on five days’ written notice.
ADDENDUM TO DECISION
On application to settle the judgment in the above-entitled action it was called to the court’s attention that the lots in the Forest Lawn Tract involved in this controversy, viz.: Lots 17 through 22, extend from the shore line of Lake Ontario to the north line of the right of way of the Mew York Central Railroad, formerly Rome, Watertown & Ogdensburg Railway.
The court inadvertently assumed that the southerly line of said lots was the southerly line of the 30-foot strip in question in the litigation.
It was also called to the court’s attention that the predecessors in title of Thomas J. O’Brien and Elinor Gregg O’Brien, his wife, acquired title to a portion of said Lot 22 by separate deed, which deed purported to convey, and did in fact only convey, that portion of Lot 22 lying north of the 30-foot right of way strip.
The court examined the exhibits and finds as to Lot 22 the only portion to which the said defendants, Thomas J. O’Brien and Elinor Gregg 0 ’Brien, have title is that portion lying north of the said 30-foot strip. There was no evidence of occupation of the said 30-foot strip such as would be necessary to acquire title by adverse possession in the absence of color of title.
In addition the parties have, by stipulation annexed hereto dated July 7, 1964, with reference to Lot 17, agreed that the portion of said Lot 17 lying south and west of the line hereinafter described has been exclusively possessed and occupied by the plaintiff, Thomas H. Sackett, excepting, however, the portion of said Lot 17 lying south of the 14-foot course first hereafter described: “Commencing at a point in the sidewalk at the *484 southerly end of Lot 17; thence westerly at an included angle of 85° 32" 14 feet to an iron pin; thence northerly 96° 40" 22 feet to an iron pin; thence northwesterly at an angle of 210° 9" 25 feet to an iron pin; thence northwesterly 198° 56" 23 feet, plus or minus, to an iron pin in the westerly line of Lot 17 where the same is intersected by the southerly line of the 30 foot strip.”
The decision herein, dated May 5, 1964, and heretofore filed in Monroe County Clerk’s office, is accordingly hereby amended so as to provide and adjudicate that title in fee simple to that portion of Lots 18 through 21 of the said Forest Lawn Tract, map of which said tract is filed in Monroe County Clerk’s office in Liber 7 of Maps, page 82, lying north of the south boundary of a 30-foot strip mentioned and described in a deed from Horace G. Pierce to Borne, Watertown & Ogdensburg Bailway, recorded in Monroe County Clerk’s office May 31, 1889, in Liber 485 of Deeds, page 281, is in Thomas J. O’Brien and Elinor Gregg 0 ’Brien, his wife, free and clear of any easements, lien, interest or claim of the plaintiff, Thomas H. Sackett, therein or thereto, and free and clear of any easement, lien, interest or claim of the defendant, Elizabeth A. Pierce, therein or thereto.
Said decision is also hereby amended so as to provide and adjudicate that title in fee simple to that portion of Lot 22 of said Forest Lawn Tract lying north of the north line of said 30-foot right of way strip is in the defendants, Thomas J. O’Brien and Elinor Gregg O’Brien, free and clear of any easement, lien, interest or claim of the plaintiff, Thomas H. Sackett, therein or thereto, and free and clear of any easement, lien, interest or claim of the defendant, Elizabeth A. Pierce, therein or thereto, and all that portion of said Lot 22 lying south of the north boundary line of said 30-foot right of way strip, is in the plaintiff, Thomas H. Sackett, free and clear of any easement, lien, interest or claim of the defendants, Thomas J. O’Brien and Elinor Gregg O’Brien, therein or thereto, and free and clear of any easement, lien, interest or claim of the defendant, Elizabeth A. Pierce, therein or thereto.
That with respect to Lot 17 said decision is also hereby amended so as to provide and adjudicate that title in fee simple to that portion of Lot 17 of the Forest Lawn Tract, map of which said tract is filed in Monroe County Clerk’s office in Liber 7 of Maps, page 82, lying north and east of the herein-above described line, reference being had to map made by Smith & Denluck, Surveyors, dated June 17, 1964, is in John Lynn O’Brien and Jane M. O’Brien, his wife, free and clear of any easement, lien, interest or claim of the plaintiff, Thomas H. Sackett, therein or thereto, and of any easement, lien, interest *485 or claim of the defendant, Elizabeth A. Pierce, therein or thereto, and all of that portion of said Lot 17 lying west and sonth of the said above described line, excepting, however, the portion of said Lot 17 lying sonth of the 14-foot course first above described, • is in the plaintiff, Thomas H. Sackett, free and clear of any easement, lien, interest or claim of the defendants, John Lynn O’Brien and Jane M. O’Brien, therein or thereto, and of any easement, lien, interest or claim of the defendant, Elizabeth A. Pierce, therein or thereto.