[No. 2704-1.  Division One.  December 1, 1975.]

QUEEN CITY SAVINGS AND LOAN ASSOCIATION, *Petitioner*, v. KATHREEN MECHEM, *Appellant*, FRANK L. MECHEM, ET AL, *Respondents*.

*Bogle & Gates* and *Michael W. Dundy,* for appellant.

*Quigley, Hatch, Loveridge & Leslie, James F. Loveridge, Jr.,* and *Edward M. Holpuch, Jr.,* for respondents.

JAMES, J.—This litigation was precipitated when appellant Kathreen Mechem obstructed access to an existing road from property owned by respondent Queen City Savings and Loan Association. Queen City reacted by bringing this action to condemn a private way of necessity over the land assertedly owned by Mechem and upon which the road is located.[1] Mechem successfully sought joinder of respondents Stanfords, asserting that they were Queen City's predecessors in interest and that the Stanfords retained ownership to land over which Queen City could and should claim an access easement by implication.

The trial judge concluded that Queen City had no need to condemn from Mechem or claim an easement from Stanford because it, Queen City, was already the beneficial holder of an access easement over Mechem's land.

The trial judge also concluded that the Stanfords held a similar access easement.

Subsequent to trial, Mechem settled with Queen City. The issue remaining is between Mechem and the Stanfords. We affirm.

The land involved is the westerly 60 feet of the east 660 feet of the south 660 feet of Government Lot 7 in Section 3, Township 21 North, Range 6 East, W.M. The parties have denominated it the "Mechem Strip." The conflicting claims to the "strip" (illustrated in the following diagram) arise

---

[1] A "private way of necessity" over the land of another may be obtained by condemnation pursuant to RCW 8.24.

as a result of conveyances by Edward Clifford, the common grantor of both Mechem and the Stanfords.

On May 5, 1941, Clifford conveyed the "Stanford" property to the Stanfords' predecessor. The description of the lands conveyed concluded with the following words: "and EXCEPT a strip of land 60 feet in width along the westerly margin for road." Stanford has sold four parcels that abut the Mechem Strip including that acquired by Queen City.

In 1939, Mechem became the owner by succession from her parents of the lands designated in the diagram as the "Mechem Property." Much of the Mechem property has been redivided and sold to others. At the time Mechem succeeded to ownership, access to her property was by use of a logging road which generally followed the route identified in the diagram as the present East Shore Lake Sawyer Road. The logging road terminated at the northerly end of the now designated "Mechem Strip."

In October 1944, Clifford and Stanford quitclaimed to King County that portion of the excepted 60-foot strip identified in the diagram as East Shore Lake Sawyer Road. It has subsequently been maintained as a county road.

In August 1953, Clifford quitclaimed to Mechem that portion of the excepted 60-foot strip identified as the "Mechem Strip." Mechem testified that "[t]here was no money consideration. It was by recognition of an agreement which the former owner, Edward Clifford, had with my deceased father about the roadway; . . ."

In October 1959, Mechem executed a "Notice of Easement for Road and Utility Purposes" by which she purported to grant an access easement to various purchasers of land from her, to Palmer Coking Coal Company, the owner of approximately 400 acres of land in section 10 (which adjoins section 3 to the south) and to various purchasers from Palmer. Palmer and other owners thereafter constructed and have maintained a road upon the "strip" without cost to Mechem.

■ The decisive question is the legal effect of the above-quoted words of "exception" in the deed from Clifford to Stanford. Washington early adopted the generally accepted rule of construction that the judicially discerned intent of the parties will determine the meaning of ambiguous words of reservation or exception in a deed.

> While it is true that there is a technical legal distinction between an exception and a reservation, it is also true that whether a particular clause in a deed will be considered an exception or a reservation depends not so

much upon the words used as upon the nature of the right or thing excepted or reserved. Martindale on Conveyancing, p. 106, § 118. An exception is a clause in a deed which withdraws from its operation some part of the thing granted, and which would otherwise have passed to the grantee under the general description. The part excepted is in existence at the time of the grant, and remains in the grantor unaffected by the conveyance. A reservation is the creation in behalf of the grantor of a new right issuing out of the thing granted, something which did not exist as an independent right before the grant. 5 Am. & Eng. Enc. of Law, p. 455, Title, "Deeds;" Tiedeman on Real Property, § 843. But frequently the words exception and reservation are used as synonymous, and the term exception will be held to mean reservation whenever it may be necessary to effectuate the intention of the parties to the instrument. *Winthrop v. Fairbanks*, 41 Me. 307; *Whitaker v. Brown*, 46 Pa. St. 197; *Cowdrey v. Colburn*, 7 Allen, 9; *Stockwell v. Couillard*, 129 Mass. 231; Martindale on Conveyancing, *supra*.

*Biles v. Tacoma, O. & G. H. R.R.*, 5 Wash. 509, 511-12, 32 P. 211 (1893). Washington is also in agreement with the generally accepted rule that parol evidence concerning surrounding circumstances may be considered in aid of construction if the intent of the parties is not clearly and unambiguously expressed in the deed. 23 Am. Jur. 2d *Deeds* § 278 (1965). Also, in *Delano v. Luedinghaus*, 70 Wash. 573, 575, 127 P. 197 (1912), it is stated that "[i]n each case the equities of all the parties must be considered in arriving at the intent of the deed" and that (*Delano* at 576) the general rule is, as now stated in 26 C.J.S. *Deeds* § 140 (5) (1956) (formerly 13 Cyc. 677):

A reasonable construction should be given to a reservation or exception according to the intention of the parties, ascertained from the entire instrument. There should be considered, when necessary and proper, the force of the language used, the ordinary meaning of words, the meaning of specific words, the context, the recitals, the subject matter, the object, purpose, and nature of the reservation or exception and the attendant

facts and surrounding circumstances before the parties at the time of making the deed.

(Footnote omitted.)

In his memorandum decision which is adopted in the formal findings of fact, the trial judge observed that Clifford was a well-known real estate developer and that at the time of the conveyance to Stanford, there was no dedicated road in the south half of Government lot 7. The trial judge found as a fact that, although it would be possible to construct a road to serve the south half of Government lot 7 on other portions of the Stanford property, "[s]uch a road would run over rough, uneven ground" and that the exception in the deed to Stanford "obviously was intended to give access to future subdivisions of the south half."

The trial judge considered the "surrounding circumstances before the parties at the time of making the deed" (26 C.J.S. *Deeds, supra*) and "the equities of all the parties . . . in arriving at the intent of the deed." *Delano v. Luedinghaus, supra* at 575. His determination that Clifford intended to provide Stanford with an access easement over the 60-foot strip is a finding of fact. It is based upon substantial evidence and may not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Citing *Justice v. Justice*, 216 Ky. 657, 288 S.W. 293 (1926), *Rall v. Purcell*, 131 Ore. 19, 281 P. 832 (1929), *Choals v. Plummer*, 353 Mich. 64, 90 N.W.2d 851 (1958), *Elliott v. McCombs*, 17 Cal. 2d 23, 109 P.2d 329 (1941), and *Sackett v. O'Brien*, 43 Misc. 2d 476, 251 N.Y.S.2d 863 (1964), the trial judge concluded that the exception in Clifford's deed to Stanford had the legal effect of creating an access easement in the 60-foot strip appurtenant to all of the lands conveyed to Stanford. We agree.

Affirmed.

FARRIS and CALLOW, JJ., concur.