[No. 52159-0.   En Banc.   February 27, 1986.]

THE ROEDER COMPANY, *Appellant,* v. BURLINGTON NORTHERN, INC., ET AL, *Respondents.*

*Roberts & Shefelman* and *Douglas C. Ross,* for appellant.

*Lawrence D. Silvernale,* for respondent Burlington Northern.

*Raymond L. Davis,* for respondent Brooks & Richards, Inc.

*Brett & Daugert,* by *Larry Daugert* and *Langabeer, Tull & Cuillier,* by *Richard J. Langabeer,* for respondents Trumbull, et al.

UTTER, J.—This is a consolidated quiet title action[1] involving the interests of Bellingham Bay and British Columbia Railroad Company (BB & BC) in two strips of land in Bellingham: an 80-foot strip reserved by the BB & BC on an 1889 plat map and included in a 1905 quitclaim deed, and a 50-foot strip included only in the 1905 quitclaim deed. The plaintiff–appellant, Roeder Company (Roeder), and the defendants–respondents[2] trace their

---

[1] The plaintiff brought seven suits altogether. This case consolidates causes 83-2-00964-9 ("Eighty-foot Strip") and 83-2-00970-3 ("Fifty-foot Strip"). Two other cases, in which Roeder prevailed, have been consolidated as cause 51136-5 and have been heard as a companion case to this one.

[2] Defendants include the following parties from "Eighty-foot Strip": Burlington Northern, Inc., a Delaware corporation doing business in the State of Washington; Dene and Diane Trumbull, Howard J. Sweitzer and Jane Doe Sweitzer, residents of Whatcom County, Washington; and Garrett Freightlines, Inc., a Washington corporation. These defendants claim ownership of the 80-foot right

claims back through different chains of title to a common grantor, BB & BC. We affirm the trial court and hold that BB & BC retained a fee interest in the 80–foot strip by its 1889 plat map reservation and that it purchased a fee interest in the 50–foot strip in the 1905 conveyance. Because we hold for defendant–respondent Burlington Northern, Inc., we do not address Burlington's estoppel and catchall clause claims. Nor do we address the adjoining property holders' claims as they are either disposed of by our ruling or not before us.

Roeder seeks reversal of that portion of the trial court's decision which holds that the fee simple interest in the 80–foot strip was not transferred by BB & BC and, even if transferred, was subsequently reconveyed to BB & BC in fee simple. Roeder also seeks reversal of the court's holding that the 1905 deed transferred the 50–foot strip as a fee rather than as a right of way easement. The defendant–respondent, Burlington, challenges the court's conclusion that the plaintiff is not estopped from claiming a fee interest in the property. Burlington also challenges the court's interpretation of a catchall clause in a 1933 deed. Codefendants, property owners of land adjacent to the abandoned railroad, dispute the trial court's determination that the adjoining property owners do not have a reversionary interest in the strips if BB & BC were found to have only an easement and not fee title.

BB & BC filed a plat map on September 25, 1889, for the first addition to the town of New Whatcom. An 80–foot–wide strip of land bearing the words "Reserved for Rail-

of way. Defendants in "Fifty–foot Strip" include Burlington Northern, Inc., and Brooks and Richards, Inc., a Washington corporation. These defendants claim ownership of the 50–foot right of way.

Three defendants are no longer parties to this action. Defendant intervenor Puget Sound Power and Light Company's use of the rights of way for electric transmission and distribution lines was upheld by the court in both cases; Roeder does not challenge these holdings. In "Eighty–foot Strip", Roeder withdrew its claim against the City of Bellingham. Also in "Eighty–foot Strip", judgment was awarded in favor of George and Marjorie Davenport pursuant to a stipulation and order of dismissal.

road" appeared across the face of the plat map. A legend subscribed upon the plat map stated that the dedication of streets and alleys was subject to certain rights retained by BB & BC. The legend was silent, however, with respect to the 80–foot strip. The court found that it was the intention of BB & BC to reserve the unencumbered fee in the 80–foot strip rather than to include it in the dedication of blocks, lots, streets, and alleys.

A little over a year later, on November 8, 1890, BB & BC conveyed by deed to the Bellingham Bay Improvement Company (BBI) a fee simple interest in certain of the real property on the plat map. Although the 1890 deed made no reference to the 80–foot–wide strip, the court found that it was not the intention of BB & BC to convey to BBI any interest in this strip by operation of this deed.

Roeder claims that the 1890 deed was unambiguous and, therefore, challenges the court's use of extraneous evidence—the 1889 plat map—to determine the grantor's intent in 1890. Roeder further claims that, even if the language of reservation marked on the 80–foot strip affected a subsequent conveyance, this language did no more than create an easement in BB & BC.

On August 17, 1905, BBI executed a quitclaim deed that conveyed several parcels of land to BB & BC, including the ones at issue here. The court found that the 1905 deed was ambiguous but that BB & BC had acquired title to both strips in fee because BBI had intended to convey all of its title and interest. Regarding the 80–foot strip, the court concluded that even if BBI had received an interest in the strip under the 1890 deed, BBI reconveyed all interest back to BB & BC in the 1905 deed. Roeder contends that the 1905 deed conveyed only a right of way easement in the strips to BB & BC and that the underlying fee simple interests remained with BBI.

Roeder next argues that under a catchall clause in a 1933 deed both rights of way eventually came into its ownership. On December 18, 1933, BBI conveyed numerous pieces of property to Bellingham Security Syndicates (BSS). The

rights of way were not specifically described, but were allegedly conveyed under the catchall clause. In 1962, under the same catchall clause, BSS conveyed whatever interest it held in the land to Fisher and Bolster; later Fisher conveyed his interest to Bolster, and, in 1983, Bolster conveyed his interest to Roeder.

Because we hold for Burlington, we need only address the following issues raised by Roeder: (1) Whether the reservation of the 80–foot right of way on the 1889 plat map created a fee simple interest in BB & BC; (2) whether the 1890 deed conveyed title in fee simple to the 80–foot right of way to BBI; (3) whether the 1905 deed conveyed title in fee simple to the 80–foot and 50–foot rights of way to BB & BC.

### (1) THE 1889 PLAT MAP

Roeder first contends that the trial court erred in concluding that BB & BC had reserved on the plat map a fee simple interest in the 80–foot railroad right of way. Roeder's position is that the language on the map, "Reserved for Railroad", was effective to reserve only a right of way easement in BB & BC.

The decisive question at the outset is the legal effect of the words of reservation on the 1889 plat map. In construing a plat, the intention of the dedicator controls. *Frye v. King Cy.*, 151 Wash. 179, 182, 275 P. 547, 62 A.L.R. 476 (1929). That intention is to be determined from all the marks and lines appearing on the plat. 26 C.J.S. *Dedication* § 49, at 519 (1956). However, where the plat is ambiguous, surrounding circumstances may be considered to determine intention. 26 C.J.S. at 520. *See also Deaver v. Walla Walla Cy.*, 30 Wn. App. 97, 633 P.2d 90 (1981); *Camping Comm'n of Pac. Northwest Conf. of Methodist Church v. Ocean View Land, Inc.*, 70 Wn.2d 12, 421 P.2d 1021 (1966); *Cummins v. King Cy.*, 72 Wn.2d 624, 434 P.2d 588 (1967); *Rainier Ave. Corp. v. Seattle*, 80 Wn.2d 362, 494 P.2d 996, *cert. denied*, 409 U.S. 983 (1972); 2 G. Thompson, *Real Property* § 383 (Supp. 1980).

Use of the term "reservation," rather than "exception," does not control whether BB & BC kept an easement or a fee. In the analogous situation involving deeds, our court has stated:

> While it is true that there is a technical legal distinction between an exception and a reservation, it is also true that whether a particular clause in a deed will be considered an exception or a reservation depends not so much upon the words used as upon the nature of the right or thing excepted or reserved. . . .

*Biles v. Tacoma, O. & G.H. R.R.,* 5 Wash. 509, 511–12, 32 P. 211 (1893). Thus, the decisive factor in determining the interest retained is the parties' intentions.

In *Biles,* a railroad both "reserved and excepted," in a warranty deed, a strip of land 400 feet wide, "to be used for a right–of–way or other railroad purposes . . ." 5 Wash. at 510. In holding that the railroad had intended to reserve a right of way and that ownership in fee passed to the purchaser by deed, the court noted that no particular portion of the land had been identified or described by the railroad. Consequently, the court concluded that the grantor had not intended to except the right of way from the operation of the grant. 5 Wash. at 513. *See also Queen City Sav. & Loan Ass'n v. Mechem,* 14 Wn. App. 470, 543 P.2d 355 (1975).

In contrast to *Biles,* BB & BC has indicated by demarcation on the face of the plat map and by the words "Reserved for Railroad" an identifiable strip of land for railroad purposes. In addition, a legend subscribed upon the face of the plat states that the dedication of streets and alleys was "subject to" certain rights retained by BB & BC. While the plat map suggests that BB & BC intended to preserve a fee simple interest in the 80–foot strip, there remained, nevertheless, some ambiguity about BB & BC's intent. Thus, the trial court properly considered the surrounding circumstances to determine the dedicator's intent. *See Deaver v. Walla Walla Cy.,* 30 Wn. App. at 100.

█ The record supports the trial court's findings that BB & BC intended to retain the underlying fee to the 80–

foot strip in the 1889 plat map. Where there is substantial evidence to support the trial court's findings of fact, they will not be disturbed on appeal. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 638 P.2d 1231 (1982). The trial court focused on whether BB & BC was running a railroad on the 80–foot right of way at the time of the conveyance. Evidence showed that there were warehouses along the reserved track and, by 1891, 23 miles of track leading to Sumas, Washington. Thus, even if not constructed, a track was likely contemplated by BB & BC in 1889 and the reservation more likely to be intended in fee. In addition, the court distinguished BB & BC's position from cases in which landowners convey to a railroad.

As the court noted, where the landowner was found to be granting an easement, there is little reason to believe that he intended to separate title in the strip of land represented by the easement from the title in the abutting lots. *See, e.g., Bradley v. Spokane & I.E. R.R.,* 79 Wash. 455, 140 P. 688 (1914). However, the facts here are more analogous to those in *Scott v. Wallitner,* 49 Wn.2d 161, 299 P.2d 204 (1956), in which a logging company conveying its own railroad was held to except the railroad in fee from conveyance of its surrounding lands. Finally, the trial court noted that the failure to even mention the strip in the 1890 conveyance, even though tracks had been laid upon it, suggested the railroad intended to reserve a fee by the 1889 plat map.

### (2) The 1890 Deed

On November 8, 1890, BB & BC conveyed to BBI all of its interest in certain lots and blocks lying within the first addition to the town of New Whatcom without any reference to the 80–foot strip. Roeder contends that the conveyance included fee simple interest in the 80–foot strip; Burlington argues that the lot and block designation referenced the 1889 dedication and thus reserved the strip from the conveyance. Because we agree with the trial court that BB & BC intended, by the plat map, to reserve a fee in the

80–foot strip, we follow the trial court in concluding that the 1890 deed, silent on the strip, conveyed only the surrounding property.

That the parties intended this result is implicit in the deed's silence. The trial court found that track had been laid along the strip by April 19, 1889. If BBI expected to receive any interest in that strip, BB & BC would have been expected to expressly state the nature of the interest it was retaining in the newly laid track. Moreover, trains ran over that track for many years after the conveyance. There was no evidence at trial to show that BBI ever objected to this use, which would be surprising, if BBI had taken a fee interest in the property.

### (3) THE 1905 DEED

The trial court found that the 1890 deed had not conveyed the 80–foot strip to BBI and, consequently, BBI did not convey any interest in this strip in the 1905 deed. Alternatively, the court held that, even if BBI had acquired an interest in the strip, BBI reconveyed the interest under the 1905 deed along with the 50–foot strip.

■ The conveyance of a right of way to a railroad may be in fee simple or may be an easement only. *Morsbach v. Thurston Cy.*, 152 Wash. 562, 568, 278 P. 686 (1929). Thus, in construing the grant of a right of way, the intent of the parties is controlling. *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981); *Scott v. Wallitner, supra*; 3 R. Powell, *Real Property* ¶ 415 (1977); 2 *American Law of Property* § 8.64 (1952). In order to ascertain that intent, a factual matter, the entire document must be examined. *Veach v. Culp*, 92 Wn.2d 570, 573, 599 P.2d 526 (1979). Where the intent of the parties is not clearly expressed in the deed, the trial court and this court may consider parol evidence. *Queen City Sav. & Loan Ass'n v. Mechem*, 14 Wn. App. at 474.

From the 1905 quitclaim deed, the trial court found the intent of the parties appeared ambiguous. We agree. The deed reads in relevant part:

All that portion of block thirty–seven (37) . . . which lies within a distance of twenty–five (25) feet, measured at right angles on each side of the center line of the main track of the Bellingham Bay & British Columbia Railroad . . .

It being the *intention hereof to convey and quit claim to the grantee herein the right–of–way* fifty (50) feet in width, being twenty–five (25) feet in width measured at right angles on each side of the center line of the main track . . .

. . .

Also all that certain *right–of–way* eighty (80) feet in width delineated upon the map of the First Addition to the town of New Whatcom, Whatcom County, Washington, as filed for record in the office of the Auditor of Whatcom County, Washington, on the 25th day of September, 1889, and thereon marked "Reserve for Railroad" . . .

(Italics ours.) Clerk's Papers, vol. 3, at 306.

Burlington urges affirmance of the conveyance in fee based upon contemporary correspondence in July and August of 1905 between officials at BBI. Finding the 1905 deed ambiguous, the court properly considered the three letters to find, by a preponderance of the evidence, that BBI intended to convey a fee to BB & BC.

We agree with the trial court's findings. The fee language in the granting clause and the easement language in the description of the land as a "right–of–way" makes for ambiguity in the deed. We note that the contemporaneous correspondence between the grantor's (BBI) president and land agent reveals their understanding that a quitclaim deed would "unquestionably convey all title with which the grantor is vested." Additional Clerk's Papers, at 143. Roeder claims the parties were discussing a deed unrelated to the conveyance at issue here. Even if that were so, the correspondence reflects an awareness of the legal effect of a quitclaim deed, such as the parties subsequently used. This, along with other indicia relied on by the trial court, supports that court's finding. The quantum of factual findings distinguishes this case from *Veach. See Veach,* 92 Wn.2d at

570. In *Veach,* there was no finding of fact as to the parties' intent, 92 Wn.2d at 573, and the court applied a rule of construction to resolve the dispute. Here, there are sufficient indicia of the parties' intent which makes inappropriate the application of the *Veach* presumption that the parties intended to create an easement. *See* 92 Wn.2d at 574.

The trial court admirably sifted and weighed the evidence in this fact–intensive case. Having reviewed the evidence, all of which is documentary, we reach the same conclusion as did the trial court. The trial court's holdings are affirmed: (1) BB & BC retained a fee interest in the 80–foot strip by its 1889 plat map, (2) that BB & BC did not convey that interest in the 1890 deed, and (3) even if it had conveyed the interest, BB & BC recovered that interest in the 1905 conveyance. Having decided this, we do not need to reach the other issues raised by the various parties.

Affirmed.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.