# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CAPE ST. MARY ASSOCIATES, | ) | NO. 79333-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SAN JUAN COUNTY, | ) | |
| | ) | |
| Respondent. | ) | FILED: March 2, 2020 |
| | ) | |

LEACH, J. — Cape St. Mary Associates (CSMA) challenges a San Juan County Hearing Examiner's decision that any application to subdivide or vacate the Ranch Tract of the plat Cape St. Mary Estates had to be signed by all of the lot owners in the subdivision. Because the Cape St. Mary plat unambiguously incorporated a restrictive covenant requiring that the Ranch Tract be used only for "primarily agricultural" purposes, RCW 58.17.212 requires that all the lot owners in the subdivision provide signatures showing their approval of any alteration proposal. We affirm.

## FACTS

In 1978, CSMA, a business entity owned by the Oles family, submitted a preliminary plat for a subdivision to be known as Cape St. Mary Estates (Cape

St. Mary).    The application proposed dividing 65 acres into 29 lots with an average density of 2.24 acres per lot.  The 65 acres included both shoreline and upland property.  CSMA also owned an adjacent 88-acre parcel called the Ranch Tract not included in the application.

The San Juan County Planning Commission recommended that the board of county commissioners deny the application unless CSMA revised it to reduce housing density.[1]  The board adopted this recommendation.

CSMA filed a lawsuit challenging the board's decision.  The court denied CSMA's request to approve the plat as proposed but remanded the matter to the planning commission for a new hearing because of a problem with the record.

At the new hearing, CSMA presented a revised proposal that included the Ranch Tract.  In April 1980, the planning commission issued findings and a decision that recommended approval of the preliminary plat of Cape St. Mary Estates.  In May 1980, the board approved the revised preliminary plat "[b]ased on the findings and recommendations presented to the Board by the Planning Commission."  Of significance to this case, the commission recommended that "[a]pproximately 90 acres known as Oles Ranch [would] be included as a tract,

---

[1] At the time, San Juan County had not adopted a comprehensive plan. The San Juan County Shoreline Master Program designated the shoreline property "Rural" with a density of one dwelling unit per two acres.  But no density restriction applied to the upland property.

subject to all restrictions and covenants, including that it be for agricultural purposes—not residential."

Later, the San Juan County Planning Director advised CSMA that the conditions of approval recommended by the commission would apply when the board reviewed CSMA's final plat application. CSMA disagreed and asked the board to review the planning director's determination. At a hearing on July 7, 1981, the board affirmed the director's decision about conditions for final plat approval. CSMA did not seek judicial review of this decision.

On July 14, 1981, the board confirmed that it had approved the preliminary plat with the conditions recommended by the planning commission for preliminary plat approval and approved the final plat. CSMA did not seek judicial review of this decision.

Consistent with the board's decisions, CSMA recorded a plat map that included the Ranch Tract as Lot 30. The plat map included 15 numbered restrictions plus an additional unnumbered provision.

Restriction 1 states, "If any private deed restrictions are in conflict with the restrictions which appear on the face of this plat, the more restrictive provision shall apply. However, the County shall not be party to any private restrictions."

The unnumbered provision states, "For further restrictions, see the Declarations of Covenants, Conditions, Easements, Liens, and Restrictions for

Cape St. Mary Estates as recorded at Auditor's File No. 117735, records of San Juan County, Washington" (CC&Rs).

Section VIII of the CC&Rs describes "Miscellaneous Use Restrictions on the Cape Saint Mary Ranch Tract." This section describes various restriction including a requirement that the Ranch Tract "is to be used primarily for agricultural purposes."

Cape St. Mary lot owners "amended the original covenants multiple times." For example, in 1985, they amended the covenants to state that the Ranch Tract could be used for "agricultural or residential purposes."[2] But the county never modified the final plat, which still references the original CC&Rs recorded in 1981.

In early 2017, CSMA asked the San Juan County Department of Community Development for a determination of signature requirements for an application to vacate or subdivide the Ranch Tract. In April 2017, the director determined that "[a]n application to vacate the ranch tract from the [Cape St. Mary] plat is subject to SJCC 18.70.080(B) and RCW 58.17.212 [and] requires an agreement signed by all parties subject to the covenants recorded in AF 117735." She also concluded that "[a]n application to subdivide the Ranch Tract is a plat alteration application [and under] SJCC 18.70.080(A) and RCW

_____

[2] CSMA states, "Every current owner of Lots 1–29 took title under the amended" covenants.

-4-

58.17.215 [and] must contain an agreement signed by all parties subject to the covenants recorded in AF 117735."

CSMA appealed and also asked the hearing examiner to "clarify that the Ranch Tract can be further subdivided for agricultural or residential purposes." In November 2017, the hearing examiner affirmed the director's decision. He found that the director's decision was "fully supported by substantial and credible evidence [and] was not clearly erroneous."

The hearing examiner found that the plat was unambiguous about restrictions on the Ranch Tract. The hearing examiner looked at the "face of the plat" and noted that it "expressly uses the term 'restrictions'" and described the restriction "by a specific recording number, i.e. a specific writing, not a draft subject to unilateral revision by the applicant." Further, the hearing examiner stated that the restriction "referenced on the face of the plat by the specific recording number restricts use of the Ranch Tract to primarily agricultural uses." Based on this evidence, he concluded that "the Ranch Tract is included as part of the plat, numbered as Lot 30 therein; and . . . 'Restrictions' applying to the plat, including Lot 30, include provisions that mandate primarily agricultural instead of residential use of Lot 30."

The hearing examiner further found that even if the plat was ambiguous, the evidence submitted by the parties established that the director's interpretation

-5-

was "credibly and convincingly" correct. The hearing examiner agreed with the director that the Ranch Tract was added to reduce density impacts to Cape St. Mary. He also concluded that the director's determination was not clearly erroneous and that Cape St. Mary "failed to exhaust [its] available legal remedies" over the 35 years since the plat was recorded.

CSMA appealed to the superior court. The superior court affirmed the hearing examiner and adopted his findings and conclusions. CSMA appeals.

ANALYSIS

CSMA offers three reasons why we should find the hearing examiner's decision incorrect. First, it claims that the CC&Rs do not create a plat provision restricting the use of the Ranch Tract. Second, it contends that the hearing examiner improperly considered extrinsic evidence. Finally, it concludes that SJCC 18.70.080.B and RCW 58.17.215 do not apply to the facts of this case. We disagree.

*Standard of Review*

The Land Use Petition Act[3] governs review of land use decisions.[4] Land use decisions are "final determination[s] by a local jurisdiction's body or officer with the highest level of authority to make the determination," like the hearing examiner, and include "interpretative or declaratory decision[s] regarding the

---

[3] Ch. 36.70C RCW.
[4] Lauer v. Pierce County, 173 Wn.2d 242, 252, 267 P.3d 988 (2011).

application to a specific property of zoning or other ordinances or rules."[5] This court's review of these decisions is limited to review of the record before the hearing examiner.[6]

This court reviews challenges to a legal determination de novo.[7] When we consider whether a local agency decision is an "erroneous interpretation of the law," we allow "for such deference as is due the construction of a law by a local jurisdiction with expertise."[8] We will find a decision to be "clearly erroneous if, 'although there is evidence to support it, the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed,'"[9] after deferring "to factual determinations made by the highest forum below that exercised fact-finding authority."[10]

*The Plat Unambiguously Incorporates the Agricultural Use Restriction*

CSMA contends that the CC&R provision requiring that the Ranch Tract "be used primarily for agricultural purposes" is not a county-imposed plat restriction controlling the use of the Ranch Tract. We disagree.

---

[5] RCW 36.70C.020(2)(b).

[6] Lauer, 173 Wn.2d at 253.

[7] King County Dep't of Dev. & Envtl. Servs. v. King County, 177 Wn.2d 636, 643, 305 P.3d 240 (2013).

[8] RCW 36.70C.130(1)(b); RMG Worldwide LLC v. Pierce County, 2 Wn. App. 2d 257, 269-70, 409 P.3d 1126 (2017).

[9] Lauer, 173 Wn.2d at 253 (quoting Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 829, 256 P.3d 1150 (2011)).

[10] Cingular Wireless LLC v. Thurston County, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

When a court construes a plat, "the intention of the dedicator controls." [11] Unless a plat is ambiguous, a court determines that intention "from all the marks and lines appearing on the plat." [12]

The plat of Cape St. Mary Estates lists 15 numbered restrictions. The following language appears immediately below the fifteenth restriction: "For further restrictions, see the Declarations of Covenants, Conditions, Easements, Liens, and Restrictions for Cape St. Mary Estates as recorded at Auditor's File No. 117735, records of San Juan County, Washington." These CC&Rs include a section with the heading "MISCELLANEOUS USE RESTRICTIONS ON THE CAPE SAINT MARY RANCH TRACT." The section begins with the statement that "the Cape Saint Mary Ranch Tract is subject to the immediately following covenants and restrictions." The first restriction states that the "tract is to be used primarily for agricultural purposes."

The plat statement referring the reader to the CC&Rs recorded at Auditor's File No. 117735 for further restrictions incorporates by reference the restrictions on the use of the Ranch Tract listed in the CC&Rs. The incorporated restrictions are plat restrictions. The fact that the CC&Rs may also create additional private covenants does not change this result. So the CC&R provision

---

[11] Roeder Co. v. Burlington N., Inc., 105 Wn.2d 269, 273, 714 P.2d 1170 (1986).
[12] Roeder, 105 Wn.2d at 273.

restricting the Ranch Tract primarily to agricultural uses is a plat restriction. The hearing examiner did not err in deciding that the plat unambiguously included the Ranch Tract as Lot 30 and incorporated a restriction limiting it to primarily agricultural use "instead of residential use."

CSMA makes a series of arguments in challenging this conclusion. Most are unsupported by legal authority, and we find none persuasive.

First, while CSMA agrees that the plat is unambiguous, it contends that the reference to the CC&Rs did not incorporate additional plat restrictions. Instead, it merely alerted potential purchasers to the existence of recorded private covenants.

"The common law doctrine of incorporation by reference has general usage in civil law and is recognized in Washington."[13] The doctrine applies to government decisions when a public document "is adequately identified 'so that there is no uncertainty as to what was adopted.'"[14]

---

[13] State v. Ferro, 64 Wn. App. 195, 198, 823 P.2d 526 (1992).

[14] Scott Paper Co. v. City of Anacortes, 90 Wn.2d 19, 31, 578 P.2d 1292 (1978) (quoting Friedman v. Goodman, 219 Ga. 152, 160, 132 S.E.2d 60 (1963)); see also Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 517, 296 P.3d 821 (2013) (stating that generally "'[i]f the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract.'") (alteration in original) (quoting Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 801, 225 P.3d 213 (2009)).

The plat explicitly identifies a specific document, recorded CC&Rs, as the source of additional applicable restrictions. This language is not uncertain. It is specific rather than general boilerplate language referring to external covenants and restrictions. CSMA cites no legal authority prohibiting a plat from identifying restrictions by reference in this manner. Its proposed interpretation ignores the phrase "for further restrictions, see . . . ."

CSMA suggests that all plat restrictions must appear on the face of a plat. It relies on a statement in Jones v. Town of Hunts Point:[15] "The inference that the restriction was a term of approval is supported by the fact that it was printed on the face of the plat." But Jones does not consider whether a restriction may be incorporated by reference, so it does not support CSMA's position. CSMA cites no other authority supporting its claim. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'"[16]

Second, CSMA asserts that because the plat is unambiguous, the hearing examiner should not have considered extrinsic evidence. This position misrepresents the hearing examiner's analysis. The hearing examiner explicitly found that the plat was unambiguous and determined that based upon the plat

---

[15] 166 Wn. App. 452, 459, 272 P.3d 853 (2011).
[16] State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

language and the doctrine of adoption by reference, the agricultural use restriction applied to the Ranch Tract. He then noted that if the plat was ambiguous, a consideration of the extrinsic evidence presented by the parties would produce the same result.

And Washington law permits an administrator or court to consider extrinsic evidence to determine the intent or purpose of a restrictive covenant, even if it is unambiguous on its face.[17] CSMA cites no authority questioning the use of the "context rule" in construing plats. This claim fails.

Third, CSMA contends that the hearing examiner improperly used extrinsic evidence to "materially change the plain meaning of the CC&R Note." CSMA supports this claim by noting that "none of the restrictions" on the face of the plat "affects the use of the Ranch Tract" except for number 14 that limits activities near the well. And it suggests that because some of the restrictions listed in the CC&Rs that apply to other lots are also described in the restrictions on the face of the plat, the hearing examiner's conclusion that the CC&Rs were incorporated as plat restrictions is wrong. Finally, it claims that because "[t]he plat contains no language prohibiting . . . the Ranch Tract from further subdivision" and the plat "expressly contemplates further subdivision of lots," the

---

[17] Hollis v. Garwall, Inc., 137 Wn.2d 683, 696, 974 P.2d 836 (1999).

hearing examiner's conclusion that the Ranch Tract is restricted to "primarily agricultural" use and from subdivision is also wrong.

As discussed above, a dedicator may incorporate restrictions by reference. CSMA provides no logical explanation why including some restrictions on the face of the plat that also appear in the CC&Rs prevents incorporating by reference other restrictions not appearing on the face of the plat.[18]

Instead, CSMA quotes the language of restriction 4 and a CC&R provision out of context to assert that because some of the restrictions address requirements for further subdivision, no restriction can be read to forbid further subdivision of any lot in the plat. Restriction 4 states, "Lots in the subdivision shall not be further subdivided 'except in accordance with County and State laws pertaining to replatting, provided such division is consistent with the Shoreline Master Program and all other official land use regulations.'"

The cited CC&R reference states, "Any application for subdivision of the Cape St. Mary Ranch Tract shall be in accordance with the applicable state and local requirements."[19]

_____

[18] Logan, 102 Wn. App. at 911.

[19] CSMA also asserts that the hearing examiner "ignored" this section. It does not explain how it comes to this conclusion.

-12-

The phrases "shall not be further subdivided except" and "[a]ny application for subdivision" do not authorize or approve further subdivision. Instead, they require that any further subdivision, if otherwise authorized, be consistent with applicable law. So CSMA's argument fails.

Fourth, CSMA contends that the plat "cannot reasonably be interpreted to incorporate a density restriction" because "[n]othing in the plat" or the CC&Rs "limits the density of the [Cape St. Mary] subdivision or precludes subdivision of the Ranch Tract." This argument does not directly address the issue before this court: who must sign an application to vacate or subdivide. The hearing examiner did not resolve the merits of a properly signed application. But alteration or vacation of the Ranch Tract would violate the requirement that the Ranch Tract, as a single lot, be used primarily for agricultural purposes. Because this argument conflates the issue we must decide, we do not address it further.

Fifth, CSMA asserts that the CC&Rs, as recorded, created private restrictions. So, because the plat states that the county "shall not be party to any private restrictions," the county was not a party to the CC&Rs. But RCW 58.17.170(3)(b) provides that a subdivision is "governed by the terms of approval of the final plat." The face of the plat here incorporates by reference the CC&R

restrictions on the use of Ranch Tract.[20]  So these restrictions are not private and CSMA's argument fails.

Finally, CSMA contends that Washington property rights will be thrown into confusion if this court accepts the hearing examiner's conclusions because purchasers must look to the face of a plat to discover use restrictions.  This is an indirect attack on incorporation by reference, an issue we have resolved.  So this contention fails.

*The Hearing Examiner Did Not Erroneously Apply SJCC 18.70.080*

CSMA asserts that "even if . . . the Ranch Tract is restricted to a 'primarily agricultural' use," the hearing examiner's determination that an application to vacate and alter the plat to allow subdivision of the Ranch Tract would trigger SJCC 18.70.080 (A) and (B) was clearly erroneous.  First, it claims that an application for a subdivision would not result in the violation of a covenant because "[t]here is no provision in the CC&Rs barring subdivision of the Ranch Tract, and there never has been."  Second, it claims that the plat restriction was not a covenant.  Finally, it claims, in the alternative, that the current owners of lots 1–29 were never subject to the original covenant because none of them owned their properties in 1981 nor did they ever own the Ranch Tract.  We find none of these arguments persuasive.

---

[20] Jones, 166 Wn. App. at 459.

SJCC 18.70.080(A)(1), governing subdivision alteration, provides:

If the subdivision is subject to restrictive covenants which were filed at the time of the approval of the subdivision, and the application for alteration would result in the violation of a covenant, the application shall contain an agreement signed by all parties subject to the covenants providing that the parties agree to terminate or alter the relevant covenants to accomplish the purpose of the alteration of the subdivision or portion thereof.[21]

SJCC 18.70.080(B)(1), governing subdivision vacation, provides:

If the subdivision is subject to restrictive covenants which were filed at the time of the approval of the subdivision, and the application for vacation would result in the violation of a covenant, the application shall contain an agreement signed by all parties subject to the covenants providing that the parties agree to terminate or alter the relevant covenants to accomplish the purpose of the vacation of the subdivision or portion thereof.[22]

First, CSMA asserts that the restriction of the Ranch Tract to primarily agriculture use does not prevent subdivision because it is not a density restriction. But, as we have noted, vacation or subdivision of the Ranch Tract would violate the requirement that this lot be used primarily for agricultural purposes. And we are not reviewing a decision to deny a properly signed application. Because vacating or subdividing the Ranch Tract would violate a covenant that is a plat restriction, a request to do this triggers SJCC 18.70.080(A) and (B). So the hearing examiner properly concluded that any proposal to

_____

[21] The language of this provision is essentially the same as RCW 58.17.215.
[22] The language of this provision is essentially the same as RCW 58.17.212.

-15-

subdivide the Ranch Tract requires the signatures of all property owners in Cape St. Mary, reflecting their approval.

Second, CSMA claims that the restriction is not a covenant. A covenant is an "agreement or promise of two or more parties that something is done, will be done, or will not be done."[23] Often these promises relate to real property and "are created in conveyances or other instruments."[24] Restrictions on the face of a plat can also be covenants.[25]

CSMA recorded the CC&Rs at the time of the original subdivision. The CC&Rs were an agreement signed by the original owners of Cape St. Mary, including the owners of the Ranch Tract. And the CC&Rs stated that the Ranch Tract was subject to certain covenants and restrictions, including the limitation that the tract be used "primarily for agricultural purposes." CSMA does not point to evidence or language supporting its assertion that this restriction was not a covenant. Instead it cites to an unpublished opinion, Picnic Point Preservation Committee v. Snohomish County,[26] where the court stated that the restrictions on the face of the plat considered in that case were not covenants. Apart from its lack of precedential value, Picnic Point did not change the rule, as stated, for

---

[23] Hollis, 137 Wn.2d at 690-91 (quoting 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.01[2] at 60-5 (1998)).
[24] Hollis, 137 Wn.2d at 690-91 (quoting POWELL at 60-5).
[25] Hollis, 137 Wn.2d at 693.
[26] No. 76645-7-I, slip op. at 7 (Wash. Ct. App. May 29, 2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/766457.pdf.

example, in Hollis, that a restriction on the face of a plat may also be a covenant.[27]

CSMA also contends that the CC&Rs have been amended and the original CC&Rs do not apply to the current owners of lots 1–29. But the plat incorporates a specific document, the original CC&Rs, and not any changes to them. The plat has not been altered, so CSMA's claim that latter amendments had any effect on the plat restrictions fails. We also note that CSMA cites no authority for the proposition that property owners can unilaterally modify conditions of plat approval by amending the CC&Rs without submitting them to the county for approval.[28] The hearing examiner correctly concluded that the "face of the plat expressly incorporates the version of CC&Rs recorded under AFN [Auditor's File No.] 117735, no other."

Finally, CSMA claims that, because all current owners of lots 1–29 purchased their property after 1981, they are not subject to the original CC&Rs and only took title subject to the amended version. But these owners took title subject to all plat provisions and those have not changed. So CSMA's argument fails.

We conclude that the hearing examiner did not err in concluding that any vacation and alteration of the Ranch Tract would violate one of Cape St. Mary's

---

[27] Hollis, 137 Wn.2d at 693.
[28] The hearing examiner noted this in his decision.

covenants. So any application for this requires the signatures of all property owners in the subdivision.

## Attorney Fees

The respondent intervenors request attorney fees under RAP 18.1 and RCW 4.84.370(1). This court may award attorney fees when applicable law authorizes them.[29] RCW 4.84.370(1) authorizes a court to award reasonable attorney fees and costs

> to the prevailing party or substantially prevailing party on appeal before the court of appeals . . . of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
>
> (a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county . . .and
>
> (b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

The respondent and respondent intervenors prevailed below, and they prevail here. And "[t]he award of attorney fees is not limited to the judgment

---

[29] RAP 18.1.

debtor, but may be made to an intervening party who prevails."[30]  So we award fees to the respondent intervenors, provided they comply with RAP 18.1.

## CONCLUSION

We affirm.  CSMA fails to establish that the hearing examiner erred in concluding that the plat restricted the Ranch Tract to a primarily agricultural use and that this restriction was a condition of final plat approval.  It also fails to establish that the hearing examiner erred in finding that the restriction was a covenant and that an application for subdivision would violate this covenant, thus triggering SJCC 18.70.080.

_Leach, J._

WE CONCUR:

_Smith, J._                    _Chelivelle, J.P.T._

---

[30] Fireman's Fund Ins. Co. v. Nw. Paving & Constr. Co., 77 Wn. App. 474, 478, 891 P.2d 747 (1995) (citing Yakima Adjustment Serv., Inc. v. Durand, 28 Wn. App. 180, 622 P.2d 408 (1981)).