[No. 6639–1–I.   Division One.   May 5, 1980.]

ELAINE ZOBRIST, *Individually and as Executrix, Respondent,* v. FRANK CULP, ET AL, *Appellants.*

*Lyle L. Iversen* and *Lycette, Diamond & Sylvester,* for appellants.

*Sam Peach,* for respondent.

JAMES, A.C.J.—This case concerns the ownership of a Whatcom County railroad right–of–way easement.

Plaintiff Elaine Zobrist owns the underlying fee of a portion of the easement here in dispute. The original deed of conveyance in 1901 provided in part that:

> Said right of way is hereby granted for the purpose of running and operating a Railroad thereover . . . Provided always however that if second party shall at any time cease or fail to *use the right of way herein mentioned and described for the purpose of running and operating a railroad over the same for the continuous period of 12 consecutive months* then and from thenceforth this instrument and the estate hereby granted shall cease and revert to first party.

(Italics ours.)

Defendant Frank Culp and his corporation, Cascade Recreation, Inc. (now known as the Lake Whatcom Railway Company), operate an excursion railroad on a 4 1/2–mile right–of–way easement they acquired from the Burlington Northern (BN) in 1971–72. The right–of–way was part of a 17–mile BN branch line until its abandonment in 1971.

In 1974, Zobrist filed suit, seeking to quiet title on the basis that the easement had been lost by nonuse. After the trial judge entered summary judgment for Zobrist, this court reversed and remanded for trial. *Zobrist v. Culp,* 18 Wn. App. 622, 570 P.2d 147 (1977). After trial on remand, the trial judge again entered judgment for Zobrist. We reverse.

The dispositive facts are not in substantial dispute. The affidavits before this court on the prior appeal showed that no regular train operated over the Zobrist property between June 5, 1970, and November 23, 1971. However, we held that the original deed did not require the actual running of

a train every 12 months. Remand was only for a determination

> on the question of whether the railroaders or their predecessor in interest, Burlington Northern, ceased or failed to use the track across the property in question for railroad purposes during the June 5, 1970, to November 23, 1971, period, . . .

*Zobrist v. Culp, supra* at 640. On remand, the testimony established that the train of November 23, 1971, operated on the branch line but did not actually traverse the Zobrist property. The trial judge found that the first train to traverse the Zobrist property after June 5, 1970, was on February 7, 1972. Accordingly, we will examine the period between June 5, 1970 and February 7, 1972, for railroad usage.

After June 5, 1970, BN made regular "speeder car" inspection trips of the branch line, necessarily traversing the Zobrist property, until February 1, 1971, when a landslide blocked the tracks. The trial judge found that no maintenance was performed on the speeder car trips. However, the undisputed testimony also showed the following: Until the February 1, 1971 slide, the branch line was not in need of significant maintenance. BN's maintenance policy on lightly used lines was not to maintain such track to a high standard until the track was actually to be used. Until the slide, the entire branch line was passable, and at all times the portion of the branch now owned by Culp was passable by trains.

The trial judge concluded "[t]he 'speeder car' inspections . . . do not constitute 'running and operating a railroad.'" Conclusion of law No. 5. We hold that he erred in so concluding.

We previously stated that it was not necessary to run a regular railroad train over the right–of–way to use it for a railroad purpose.

We hold that to run and operate a railroad in accordance with the terms of the deed granting a right–of–way easement for railroad purposes and avoid a nonuse stipulation, a railroad must actively pursue some legitimate course of action which directly or indirectly contributes to the safe, economical and efficient operation of its road. *Zobrist v. Culp, supra* at 635. As a matter of law, speeder car operation was such a legitimate activity. Not only was it a direct use of the track and the right–of–way, but its purpose was inspection and possible minor maintenance. "Keeping its roadbed and tracks in good repair is a duty of the railroad, . . . and directly 'contributes to the safe, economical and efficient operation of its road.'" (Citations omitted.) *Zobrist v. Culp, supra* at 639. It cannot be said that it was "sham activity performed for the sole purpose of creating a colorable use [which] cannot be said to fit within legitimate railway purposes contemplated by the original grantor and grantee of the easement." *Zobrist v. Culp, supra* at 634.

Having established that the right–of–way was used for railroad purposes until February 1, 1971, the remaining question is whether 12 months elapsed thereafter until it was again so used. We hold that such time did not elapse.

On September 21, 1971, Culp contracted in writing with BN for the purchase of 4 1/2 miles of the branch line. In October and November 1971, Culp and others walked the length of his purchase, inspecting the condition of the track and performing minor maintenance as necessary to prolong the life of the track. As above discussed, Culp's right–of–way did not need major repair work. On January 15, 1972, Culp acquired a handcar, which was run over the track and was used in connection with minor track maintenance.

Culp offered findings of fact concerning his maintenance and inspection activities and the handcar's operation. Those findings were rejected by the trial judge, who instead found that "some inconsequential maintenance was performed by Cascade Recreation, Inc., . . . ." Finding of fact No. 15.

Zobrist asserts that the trial judge found as he did because Culp was not a credible witness: "We do not believe the court disregarded Culp's testimony of work done; he simply disbelieved him." We are mindful that the trial judge saw and heard Culp testify and that his evaluation concerning Culp's credibility is not to be disturbed on appeal. *Carson v. Mills,* 49 Wn.2d 597, 304 P.2d 712 (1956).

However, the record does not support Zobrist's contention. Credibility was not in issue. In ruling on the proposed findings, the trial judge stated,

> Yes, he did do some work but it's pretty minor but *the thing that's pretty persuasive to me is that he didn't have any title at that point and this was all expectation* and I am going to leave them stand. If the testimony is there and the appellate court finds that it's significant or persuasive they can evaluate it but it was pretty thin to me and it was pretty minimal type of work and very hard to specify.

(Italics ours.) We hold the trial judge erred in concluding Culp's activities in late 1971 through early 1972 did not amount to "use [of] the right of way . . . for the purpose of running and operating a railroad . . ."

At the times in question, BN had already agreed to sell the right–of–way to Culp, even though title did not pass until January 25, 1972. BN's offer, which Culp accepted, provided that:

> Actual delivery of title will be withheld until such time as we have completed removal of track materials between the end of the portion to be conveyed to you and the northerly limit of the line abandonment. This is to enable our equipment to operate over the subject portion of the line in the course of such removal work.

Exhibit 17. We consider the fact that Culp did not then have legal title to be immaterial. He had more than a mere expectation of acquiring the right–of–way. Nothing indicates the nature or extent of his activities were affected by his failure to have legal title.

Having concluded that no period of 12 months elapsed in which the right–of–way was not used for railroad purposes,

we hold Culp is entitled to judgment in his favor as a matter of law.

Reversed.

SWANSON and ANDERSEN, JJ., concur.

Reconsideration denied June 11, 1980.

Review granted by Supreme Court September 5, 1980.