[No. 47180–1.   En Banc.   May 7, 1981.]

ELAINE ZOBRIST, *Individually and as Executrix,
Petitioner,* v. FRANK CULP, ET AL,
*Respondents.*

*Sam Peach,* for petitioner.

*Diamond & Sylvester,* by *Lyle L. Iversen,* for respondents.

ROSELLINI, J.—This is a quiet title action brought to establish the petitioner's right to property claimed by the respondents as a railroad right-of-way. The deed to the respondents' predecessors granted an easement which was limited by the following provision:

> Said right of way is hereby granted for the purpose of running and operating a Railroad thereover and the said first party reserves the right to free access to pass and repass and go over and return on the said R. R. built and constructed upon the premises aforesaid to and from the lands on each side thereof, except when trains are being operated thereon. Provided always however that if second party shall at any time cease or fail to use the right of way herein mentioned and described for the purpose of running and operating a railroad over the same for the continuous period of 12 consecutive months then and from thenceforth this instrument and the estate hereby granted shall cease and revert to first party.

A railroad was constructed and operated until a date in 1970, when the then owner of the right-of-way, Burlington Northern, ceased to run freight or passenger trains on the branch line that crossed the plaintiff's property. The Interstate Commerce Commission approved the abandonment of the line, effective July 1, 1971. Until the date of approval, the commission required Burlington Northern to furnish any requested freight service, and it was ready and willing to do so. However, it received no request for transportation on this line. Thereafter, some of the tracks were dismantled.

The respondents, who are railroad buffs, purchased a portion of the tracks, including those which were laid down on the easement granted by the petitioner. In May 1972, they began the operation of a weekend and summer excursion train.

In the meantime, some activities had occurred on the tracks. Burlington Northern did some maintenance designed to keep the tracks in repair for salvage operations. The respondent Culp also ran "speeder cars" over the tracks prior to the date of purchase. He did some minor

repairs or maintenance, but none on the petitioner's property. No passenger or freight trains passed over the tracks from June 1970 until May 1972, when the respondents' excursion runs began. Work trains (to dismantle and pick up tracks) proceeded along the tracks in November and December 1971.

The trial court granted the petitioner's motion for summary judgment, finding no material issue of fact and holding that the easement had been extinguished pursuant to terms of grant.

The Court of Appeals reviewed that judgment in a per curiam opinion. *Zobrist v. Culp,* 18 Wn. App. 622, 570 P.2d 147 (1977). It determined that the rights of the parties depended upon the words used in the grant of the easement, rather than upon the common law of abandonment.

The court further recognized that the parties to the grant of easement here had set out "exactly what would amount to abandonment." *Zobrist,* at 634.

The opinion of the Court of Appeals, beginning at page 634, is not free of ambiguity. There is language which might be construed as holding that mere maintenance, standing alone, with or without the running of trains, amounts to "operating a railroad". However, when read as a whole, we think it can fairly be said to have held only that the granting of summary judgment was premature, inasmuch as the question whether trains had operated upon the track had not been resolved. The court said that, while the railroaders did not rebut specifically the contention that no trains were run over the right–of–way, they did present evidence that the line and stations along it had been maintained throughout the period in question. If so, the opinion suggests, an inference could be drawn that the tracks, being operable, were used.

The cause was remanded for resolution of the factual issue "whether the railroaders or their predecessor . . . [had] ceased or failed to use the track across the property in question for railroad purposes during the June 5, 1970, to November 23, 1971, period". *Zobrist,* at 640. The use of

the term "railroad purposes" was erroneous. As the court had expressly pointed out earlier in the opinion, the deed did not use that term but rather used the expression "for the purpose of running and operating a railroad over the same". The trial court was justified in construing its duty as that of determining whether the tracks across the plaintiff's property had been used for the purpose of operating a railroad.

Upon remand the case was tried to the court, which found that after June 5, 1970, there was no further train traffic from Bellingham to Wickersham (the points between which the line had operated). The court found that after September 23, 1970, the Burlington Northern had no further operational use for the Bellingham–Wickersham line, but did plan to sell a portion of the line, in place, to the respondents. That sale was consummated on January 25, 1972. Prior to and subsequent to that acquisition, the respondents performed some inconsequential maintenance on the line, but none upon or in the vicinity of the petitioner's property. Burlington Northern speeder car "inspections" continued until February 1, 1971, but no maintenance was done by that company. From February 1, 1971 until November 23, 1971, a slide blocked the line at Mile Post 13 (west of the petitioner's property). That slide was removed by Burlington Northern in order to enable a work train to remove rails. That train came from Bellingham and did not proceed as far east as the petitioner's property.

Based upon these findings, the Superior Court concluded that no railroad was run or operated upon the petitioner's property for more than a year; that inspections and salvage operations conducted by the Burlington Northern did not constitute "running and operating a railroad," and that the respondents did not conduct any activities upon the petitioner's land which constituted the running and operation of a railroad for a period of more than 12 months.

Again it held that the grant of the easement had terminated by the express terms of the deed.

Upon a second appeal, the Court of Appeals again reversed the Superior Court (*Zobrist v. Culp,* 26 Wn. App. 86, 611 P.2d 1330 (1980)), this time holding that both the speeder car inspections conducted by Burlington Northern and inspections made by the respondents prior to and after their purchase of the tracks amounted to "'use [of] the right of way . . . for the purpose of running and operating a railroad". *Zobrist,* at 90. In reaching that decision, the court stressed that inspection and maintenance are "railroad purposes". It found insignificant the fact that no railroad operation was begun by the respondents until June 1972.

In so holding, the court effected a substantial revision in the instrument, treating it as though it had required the railroad company to hold and maintain the tracks, rather than to use them.

In construing the grant of a right–of–way, it is the court's duty to endeavor to arrive at and enforce the intention of the parties. *Missouri–Kansas–Texas R.R. v. Freer,* 321 S.W.2d 731 (Mo. App. 1958); 74 C.J.S. *Railroads* § 81 (1951); 2 *American Law of Property* § 8.64 (A.J. Casner ed. 1952); 3 R. Powell *Real Property* § 415 (1979). The intent is to be derived from the whole instrument, and if ambiguity exists, the situation and circumstances of the parties existing at the time of the grant are to be considered. 2 *American Law of Property, supra*; 3 Restatement of Property §§ 241, 242 (1940); 2 B. Elliott & W. Elliott, *Railroads* § 1153 (3d ed. 1921).

The trial court's findings are substantiated by the evidence and its conclusions give effect to the intent expressed in the grant of a right–of–way.

The respondents argue that the tracks did not need repairs on the respondents' property. While there is some dispute as to that matter, it is not material and may be conceded.

The respondents also attach significance to the further fact which was established at the original trial, that during part of the period of nonuse, Burlington Northern was

obligated under the Interstate Commerce Commission regulations or orders to furnish freight transportation over this route to any person who might request it. However, no use was made of the tracks in fulfillment of that obligation.

As the Court of Appeals noted in the first appeal of this case (18 Wn. App. 622), various activities not involved in the actual operation of freight and passenger trains may be embraced within the term "railroad purposes". Holding the track for possible use in case of request for services, or maintaining the track for future use, or running work trains or cars over it, may constitute a "railroad purpose".

Here, the question is not, were the tracks used for a railroad purpose? but, rather, were they used for the purpose of running and operating a railroad over the right–of–way? The extent and duration of the easement is to be determined from the terms of the grant. *Missouri–Kansas–Texas R.R. v. Freer, supra*; 3 R. Powell, supra; 5 Restatement of Property § 482 (1944); 1 G. Thompson, *Real Property* § 368 (rev. perm. ed. 1939); 74 C.J.S. *Railroads* §§ 81, 84, 85, 92 (1951).

We are in agreement with the trial court that for a period of more than 1 year the tracks across the petitioner's property were not *used* for the purpose of "running and operating a railroad over the same". To use is not synonymous with "to hold" or "to maintain". *See Webster's Third New International Dictionary* 1078, 1362, 2523 (1966); *Roget's Thesaurus* 670, 677, 777 (new ed. rev. 1979). It means to employ, to put into action or service.

What is the operation of a railroad? A railroad, this court said long ago in *Northern Pac. Ry. v. State,* 84 Wash. 510, 147 P. 45 (1915), is a public service transportation corporation. Its *operating* property is devoted to the public service of transportation over lines and terminals having a fixed location. It follows that when a railroad is "operating," it is furnishing transportation, either freight or passenger, to the public.

That this grant contemplated the continuous operation of freight or passenger trains over the right–of–way is man-

ifested not only by the provision for reversion in the event of nonuse for a 12–months' period, but also by the statement of purpose contained in the same paragraph, that purpose being the "running and operating [of] a railroad".

None of the activities of Burlington Northern or of the prospective purchasers of its interest, during a period of more than a year, and none of the obligations imposed by the federal government upon the owner, amounted to use of the tracks for the operation of freight or passenger trains.

The Court of Appeals erred in reversing the judgment of the trial court (*Zobrist v. Culp,* 26 Wn. App. 86, 611 P.2d 1330 (1980)), and that judgment is hereby reinstated.

BRACHTENBACH, C.J., and STAFFORD, WILLIAMS, DORE, and DIMMICK, JJ., concur.

DOLLIVER, J. (dissenting)—Like the majority, I agree this case turns on the language of the easement. The easement was granted "for the *purpose* of running and operating a Railroad thereover", and would revert to the grantor if the grantee "shall at any time cease or fail to use the right of way . . . for the *purpose* of running and operating a Railroad over the same for the continuous period of 12 consecutive months".

It is undisputed that the Interstate Commerce Commission did not grant authority to abandon the railroad line which ran over the easement in question until July 1, 1971. It is further undisputed the defendant operated its first train over the tracks in question on June 3, 1972. Finally, it is undisputed that until July 1, 1971, the Burlington Northern was in the words of the majority "obligated under the Interstate Commerce Commission regulations or orders to furnish freight transportation over this route to any person who might request it." In other words, until July 1, 1971, the only "purpose" for which the right–of–way in question could have been put to use by the grantee (Burlington Northern) was "running and operating a Railroad".

The fact that no trains ran over the right–of–way from

June 5, 1970 to July 1, 1971 is immaterial. The instrument relied upon by the majority does not say trains had to run or operate over the right–of–way, only that it had to be used for the *purpose* of running and operating a railroad. Given the Interstate Commerce Commission regulations, there is no escaping that the only purpose for which the right–of–way could be used was for running and operating a railroad.

It is clear from the language of the easement that the parties contemplated a reversion to the grantor if the property was not used for the purpose of running and operating a railroad for more than 12 months. There is nothing in the easement to indicate the limitation of "12 consecutive months" was a requirement that trains in fact run on the track—only that the right–of–way must be used for that purpose. When that was the only purpose for which the right–of–way was in fact and in law available until July 1, 1971 and when railroad operations were resumed by June 3, 1972, it is apparent to me the requirements of the easement were met by the Burlington Northern and its successor, the defendant.

Although I would use other reasoning, I would affirm the Court of Appeals.

UTTER and HICKS, JJ., concur with DOLLIVER, J.

Reconsideration denied July 10, 1981.