

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE FEB 1 2 2015

Madsen C.J.
CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on 2-12-15

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

CRYSTAL RIDGE HOMEOWNERS ASSOCIATION, a Washington nonprofit corporation; J. ABULTZ, an individual; LAURIE AND WILSON AMARAL, husband and wife, and the marital community thereof; CRAIG ARNO, an individual; CARON BEAR, an individual; DAVID A. BENNETT, an individual; GLORIA BLADES, an individual; DUANE AND GWEN BOWMAN, husband and wife and the marital community thereof; THOMAS AND CYNDY BOYER, husband and wife, and the marital community thereof; JEFF AND KERI BROWN, husband and wife, and the marital community thereof; DON COLEMAN, an individual; DON DACHENHAUSEN III and DAWN MONCALIERI; ANH-VIET AND LISA DANG, husband and wife, and the marital community thereof; BRAD AND JULIE DELUCA, husband and wife, and the marital community thereof; BELARMINO DIAZ, an individual; GARY J. AND JOHANN J. FELT; NICHOLAS AND MYUNG FIX, husband and wife, and the marital community thereof; BARRY AND BONNIE FRETWELL, husband and wife, and the marital community thereof; TATSUICHIRO FURUKAWA, an individual; J. CHRIS AND MARGARET GAZEY, husband and wife, and the marital community thereof; PHILL AND ANNE MARIE HASTINGS, husband and wife, and the marital community thereof; JEROME J. AND LINDA L. HODGES, husband and wife, and the marital community thereof; RAYMOND AND PAM HUTCHINSON, husband and wife, and the marital community thereof; STEVE L. AND MANTI L. JOLLENSTEN, husband and wife, and the marital community thereof; PETER AND BEVERLY JOHNSON, husband and wife, and the marital

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 89533-3

En Banc

Filed    FEB 1 2 2015

community thereof; JAMES R. AND MAILLE A. )
KESSENICH, husband and wife, and the marital )
community thereof; BRIAN AND KRISTI KING, )
husband and wife, and the marital community )
thereof; JOHN AND VICKI KLEIN, husband and )
wife, and the marital community thereof; CORRIE )
KRAP, an individual; JOHN AND DEBBIE LAMB, )
husband and wife, and the marital community )
thereof; RICHARD R. AND JANET E. LARSON, )
husband and wife, and the marital community )
thereof; JEFF LONGAKER, an individual; ROBERT )
AND LYNNE LUCKEY, husband and wife, and the )
marital community thereof; TOM MCKEY, an )
individual; PHYLLIS M. AND WAYNE MURPHY, )
husband and wife, and the marital community )
thereof; MICHAEL A. MEYER, an individual; )
BRUCE AND KATHERINE NGYUEN, husband and )
wife, and the marital community thereof; )
CLIFFORD AND KATHLEEN O'CONNELL, )
husband and wife, and the marital community )
thereof; JAZ JANG AND CHOON PARK; STEVEN )
J. PFISTER, an individual; RUSSELL AND )
PAULINE PORTER, husband and wife, and the )
marital community thereof; LARRY AND JANICE )
RENDAHL, husband and wife, and the marital )
community thereof; DIANE AND PAUL ROBERTS, )
husband and wife, and the marital community )
thereof; CRAID AND KAREN RENFROW, husband )
and wife, and the marital community thereof; )
MARGARET ROMANO, an individual, AARON AND )
SHAUNA RUCKMAN, husband and wife, and the )
marital community thereof; FAYE N. SCANNELL, )
an individual, BEN AND JACLYN SETTER, )
husband and wife, and the marital community )
thereof; STEVEN RUBENSTEIN AND MARIANNE )
SHAW; JOHN AND KARIN SHIPMAN, husband )
and wife, and the marital community thereof; )
MICHELE SINKULA, an individual; DONALD AND )
MARILYN SIDES, husband and wife, and the )
marital community thereof; JOHN SMITH, an )
individual; RICHARD F. AND NORMA S. SMITH, )
husband and wife, and the marital community )
thereof; SCOTT AND SHARI TRAIL, husband and )
wife, and the marital community thereof; JOHN )
TRAXLER, an individual; DEAN AND MARIE )

2

VAUGHAN, husband and wife, and the marital community thereof; DIANE WING, an individual; KENNETH AND LEA WOOD, husband and wife, and the marital community thereof; MARIA K. WYATT, an individual,

        Respondents,

v.

CITY OF BOTHELL, a municipal corporation,

        Petitioner.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

WIGGINS, J.—We must decide whether the city of Bothell assumed responsibility for maintaining a drainage pipe installed in Crystal Ridge, a residential subdivision in Snohomish County. Crystal Ridge was developed from two residential plats that Snohomish County approved in 1987. The area became incorporated into the city of Bothell (City) in 1992. One of the plats contained a drainage easement within a tract owned by the Crystal Ridge Homeowners Association (HOA). The plat dedicated that drainage easement to Snohomish County. Ordinarily, approval of a plat by a county constitutes acceptance by the county of any easements dedicated therein. The City, however, argues that the disputed drainage pipe is outside the scope of the drainage easement that the City inherited from Snohomish County.

We disagree and hold that the only reasonable interpretation of the Crystal Ridge plat is that Snohomish County—and therefore the City—assumed responsibility for maintaining the drainage pipe. We therefore affirm the trial court's grant of summary judgment in favor of respondents.

FACTS

In 1987, Snohomish County approved development of two residential plats collectively called Crystal Ridge. At the time, the area encompassing Crystal Ridge was part of unincorporated Snohomish County (County). In 1992, five years after the Crystal Ridge plats were approved, the area became incorporated into the City.

Naturally occurring wet soil conditions posed a substantial challenge to the development of Crystal Ridge. In his decision approving the Crystal Ridge plats, the County's hearing examiner, John E. Galt, noted three potential sources for the saturated soil in his findings: (1) "subsurface water," or groundwater, that "has been stored in porous soil layers upslope of the site," (2) "septic tank drainfields in the development upslope," and (3) "leakage from storm drains or water lines." Decision of Hr'g Exam'r at 3. To alleviate these wet soil conditions, consulting geotechnical engineer Dr. Gordon Denby stated in his report to the hearing examiner that "an interceptor trench or trenches along the west property line would be necessary in order to intercept the groundwater flow and dewater the site so that residential construction could occur." *Id.* The trench would have to be "as much as 12 feet deep in order to accomplish the desired purpose." *Id.* The hearing examiner included the following conclusion in his decision:

> The most critical issue involved in the instant proposal is subsurface and surface drainage. The simple reality is that this site is not your typical piece of property and that typical drainage standards would probably not adequately protect the public use and interest. . . . The recommendations

made by [Dr. Denby] should be made mandatory conditions of project approval.

*Id.* at 7.

To this end, the hearing examiner required the developer to install an underground pipe to intercept and divert water away from the site. The interceptor pipe was placed 11 feet underground in an area labeled "Tract 999" on the plat. Groundwater captured by the interceptor pipe was directed to a pond on adjacent private property.

The recorded plat showed that Tract 999 would be owned by the HOA subject to an easement described as a "25' sanitary sewer (A.W.D.) and drainage easement." The plat further provided that "drainage easements designated on this plat are hereby reserved for and granted to Snohomish County for the right of ingress and egress for the purpose of maintaining and operating stormwater facilities." Tract 999 contained two buried pipes located in the same trench: a sewer pipe belonging to the Alderwood Water District (the "A.W.D." referenced in the above-quoted description of Tract 999) and the interceptor pipe.

In 2010, the HOA and several individual homeowners (respondents) sued the City, alleging that the interceptor pipe had failed and damaged several properties within the development.[1] Respondents moved for summary judgment, seeking a declaratory judgment that the City, as successor to the County, was responsible for maintaining the interceptor pipe. The City filed a cross motion for summary judgment,

---

[1] Respondents also asserted claims of negligence, inverse condemnation, trespass, and nuisance, but none of these claims are at issue in this appeal.

seeking a declaratory judgment that the HOA was responsible for the interceptor pipe. The trial court denied the City's motion and granted summary judgment in favor of respondents. The trial court then certified the issue to the Court of Appeals, which affirmed the trial court's ruling in favor of respondents. *Crystal Ridge Homeowners Ass'n v. City of Bothell*, noted at 175 Wn. App. 1047, 2013 WL 3872223.

## ANALYSIS

Dedications of land to public entities like the County and the City are controlled by chapter 58.17 RCW (subdivision act), which governs plats, subdivisions, and dedications. The legislature enacted the current iteration of the subdivision act in 1969.[2] The act's express purpose is, among other things:

> to regulate the subdivision of land and to promote the public health, safety and general welfare in accordance with standards established by the state to prevent the overcrowding of land; . . . to promote effective use of land; to promote safe and convenient travel by the public on streets and highways; . . . *to facilitate adequate provision for water, sewerage, parks and recreation areas*, sites for schools and schoolgrounds and other public requirements; . . . to provide for the expeditious review and approval of proposed subdivisions which conform to zoning standards and local plans and policies; [and] to adequately provide for the housing and commercial needs of the citizens of the state. . . .

RCW 58.17.010 (emphasis added).

The subdivision act also sets forth the requirements for a statutory dedication:

> "Dedication" is the deliberate appropriation of land by an owner for any general and public uses, reserving to himself or herself no other rights than such as are compatible with the full exercise and enjoyment of the public uses to which the property has been devoted. The intention to dedicate shall be evidenced by the owner by the presentment for filing of a final plat or short plat showing the dedication thereon; and, the

---

[2] *See* LAWS OF 1969, 1st Ex. Sess., ch. 271.

6

acceptance by the public shall be evidenced by the approval of such plat for filing by the appropriate governmental unit.

RCW 58.17.020(3).

The parties do not dispute that such a statutory dedication of Tract 999's drainage easement occurred,[3] nor do they dispute that the County accepted this dedication.[4] Rather, the dispute centers on two issues: the scope of the drainage easement and the associated dedication, and whether interpreting the easement to include the interceptor pipe would run afoul of the restrictions on the use of public funds contained in article VIII, section 7 of the Washington Constitution. We decline to reach the latter argument because the City failed to raise it prior to filing its petition for review.

The remaining issue, whether the drainage easement includes the interceptor pipe, is essentially a matter of plat interpretation. Specifically, the City argues that the interceptor pipe does not fall within the scope of the drainage easement and that the interceptor pipe therefore was not dedicated to the County. Consequently, the City claims neither the County nor the City ever accepted responsibility for maintaining the

---

[3] Because a statutory dedication occurred, we need not address the common-law-dedication argument presented in the City's petition for review. Indeed, respondents never asserted common-law dedication before the trial court. The City first set up this straw man before the Court of Appeals, which properly dismissed it by noting that "this argument rests on the City's premise that there was no statutory dedication. . . ." *Crystal Ridge*, 2013 WL 3872223, at *5.

[4] Here, acceptance of the Crystal Ridge plats is evidenced by the signatures that appear on the plats. Specifically, the plat for Crystal Ridge's Division 2, which includes Tract 999, bears the signatures of Snohomish County's Director of Public Works, Director of Department of Planning and Community Development, and County Council Chairman. Each of those officials certified that they reviewed and approved the plat. The plat further bears the signature of the County Auditor, certifying that the plat had been filed, and the County Treasurer, certifying that property taxes had been paid.

interceptor pipe. We disagree and hold that the County—and therefore the City—assumed responsibility for maintaining the interceptor pipe as part of Tract 999's drainage easement.

## I. Plat Interpretation

A "plat" is "[a] map describing a piece of land and its features, such as boundaries, lots, roads, and easements." BLACK'S LAW DICTIONARY 1337 (10th ed. 2014). In construing easements in a plat, the dedicator's intent controls. *Roeder Co. v. Burlington N., Inc.* 105 Wn.2d 269, 273, 714 P.2d 1170 (1986). We determine intent from the marks and lines on the plat itself. *Id.* If the plat is ambiguous as to the dedicator's intent, courts may consider surrounding circumstances, *id.*, including extrinsic evidence. *Rainier View Court Homeowners Ass'n v. Zenker*, 157 Wn. App. 710, 720, 238 P.3d 1217 (2010). Here, no ambiguity surrounds the easement in question. Moreover, even if we were to read the plat as ambiguous and consider extrinsic evidence, the City's attempts to disclaim responsibility for the interceptor pipe would fail.

### A. Intrinsic Evidence

The intrinsic evidence unambiguously demonstrates that the drainage easement contained on the plat includes the interceptor pipe. The plat shows that Tract 999 contains a "25' sanitary sewer (A.W.D.) and drainage easement." Three of the plat's four pages include the following text in bolded letters: "Drainage easements designated on this plat are hereby reserved for and granted to Snohomish County for

8

the right of ingress and egress for the purpose of maintaining and operating stormwater facilities." This comports with the general rule that the burden of maintaining an easement lies with the holder of that easement rather than the owner of the servient property. *E.g., Camus v. Culpepper*, noted at 157 Wn. App. 1046, 2010 WL 3420379, at *5 ("Generally, the duty to maintain an easement is on the owner of the dominant estate.").[5] Because the County assumed responsibility for maintaining the Tract 999 drainage easement, it necessarily follows that if the interceptor pipe falls within the scope of that easement, the City—as successor in interest of the County— has responsibility for maintaining the interceptor pipe.[6]

The parties in this case do not dispute that the interceptor pipe is buried in Tract 999 or that the pipe serves the purpose of drainage. Although no pipes appear on the face of the plat, the record establishes that the drainage easement contains only two

---

[5] *See also* 25 AM. JUR. 2D *Easements and Licenses* § 72 (2014) ("Whether by agreement or a common-law right or duty, the owner of an easement must keep it in repair. The owner of the servient tenement ordinarily is under no duty to maintain or repair it, in the absence of an agreement imposing such a duty." (footnotes omitted)).

[6] The dissent asserts that the drainage easement merely granted the County a right of access. Dissent at 5. Neither party has ever advanced this argument. The City has argued that the dedication does not include the interceptor pipe at all because the pipe is not a stormwater facility; it has not advanced an alternative argument that the easement does cover the interceptor pipe but that the easement bestowed only a limited right of access with no attendant maintenance duties. The intent of the dedicator controls the scope of the easement, and the record contains no support for the argument that the dedicator intended (or even contemplated) that any entity other than the County would maintain the pipe. Certainly, nothing in the record suggests that the plat's drafters intended for the HOA to assume responsibility for maintaining the pipe, as the City argues. What would be the point of granting the County a drainage easement in Tract 999 for the purpose of maintenance without expecting the County to maintain the only drainage facility inside the tract? None.

pipes: the interceptor pipe and the Alderwood Water District sanitary sewer pipe.[7] Because the plat expressly dedicated the only other pipe within the easement—the sanitary sewer pipe—to the Alderwood Water District rather than the County, the interceptor pipe is the only drainage facility located within Tract 999 that could possibly have been dedicated to the County. Consequently, the only reasonable construction of the "drainage easement" shown in Tract 999 on the face of the plat is that the easement includes the interceptor pipe. The words and markings on the plat document thus establish that the dedicator intended to convey responsibility for the interceptor pipe to the County.

The City seizes on two words in the plat—"stormwater facilities"—to argue that the plat drew a distinction between "stormwater facilities" and "groundwater facilities." According to the City, the County assumed responsibility for maintaining only "stormwater facilities" while maintenance of "groundwater facilities" remained the duty of the HOA. We will not read the City's proposed distinction into the Crystal Ridge plat. Nothing in the plat indicates that the HOA reserved the right to maintain groundwater facilities, and a stormwater/groundwater distinction appears neither in the plat nor in the contemporaneous documents in the appellate record. We will not read a distinction into the plat where the record is completely devoid of evidence suggesting that the

---

[7] The City argued before the Court of Appeals that they had not "heard" of the interceptor pipe prior to 2008. This is untrue. The hearing examiner required the construction of the pipe in his 1984 decision, which the Examiner sent not only to multiple county officials and agencies, but also to the City itself. Similarly, we reject the City's attempts to attach significance to the pipe's absence from the face of the recorded plat. As noted above, the plat does not depict *any* pipes at all in Tract 999 or in any of the other drainage and sewage easements that appear on the plat. Regardless, the hearing examiner's decision, combined with the plat's clear dedication of the Tract 999 drainage easement to the County, sufficed to place the City on notice of its responsibility for maintaining the pipe.

plat's drafters contemplated the distinction. *Cf. Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 696-97, 974 P.2d 836 (1999) (rejecting a party's interpretation of a restrictive covenant contained in a plat because adopting the interpretation "would require this court to redraft or add to the language of the covenant").

B. Extrinsic Evidence

Even assuming for the sake of argument, however, that the plat is ambiguous regarding whether the easement includes "groundwater" facilities, the extrinsic evidence contradicts the City's argument. The Snohomish County Code (SCC) at the time of the dedication specifically provided that drainage facilities "shall" be dedicated to the county where private maintenance would be inadequate. Here, the engineers' unrefuted declarations confirm that private maintenance of such a pipe would likely be inadequate and undesirable. Indeed, Theodore Trepanier, one of the engineers who worked on the platting of Crystal Ridge, stated in his declaration:

> Based on my personal knowledge, during the years that Crystal Ridge Division No. 2 was built and accepted, the County wanted to have control of all the retention/detention systems and their accompanying drainage structures . . . . The easements were required by the County so that it had the unquestionable ability to perform maintenance and repairs on these types of facilities.[8]

Given the likely inadequacy of private maintenance, adopting the City's narrow construction of the easement would defeat the subdivision act's express goals of

---

[8] The City strongly objects to this portion of the declaration, arguing that the court cannot rely on a declaration by a third party to divine the county's intent as to this particular project in 1987. We disagree for the reasons stated by the trial court during its oral ruling on summary judgment: "[Trepanier] can't testify as to the internal intent of the county, but he can certainly testify as to what was the observable policy and actions of the county. No one's come in and said no, we never did that, et cetera, and it stands unrebutted."

"facilitat[ing] adequate provision for water [and] sewerage" and "promot[ing] the public health, safety and general welfare." RCW 58.17.010. We therefore decline to give the scope of the easement the unduly narrow construction proposed by the City.[9]

The City's disclaimer of the interceptor pipe as a groundwater facility also fails for practical reasons. The record shows that the interceptor pipe was not designed to drain solely groundwater or stormwater, nor did it exist in a vacuum that permitted it to collect only "groundwater" without "stormwater." Dr. Denby, the supervising geotechnical engineer who surveyed the property in 1984, testified that the purpose of the pipe was to drain both groundwater and stormwater runoff from west of the development. The hearing examiner's decision recognized that the "most critical issue involved in the instant proposal is *subsurface* and surface drainage." Decision of Hr'g Exam'r at 7 (emphasis added).

Geotechnical reports adopted by the hearing examiner likewise recognize that the drainage issues stemmed not only from groundwater, but also from infiltrating

---

[9] Moreover, the SCC itself contemplated a broad construction of "storm and surface water":

> "Storm and Surface Water Management Facilities and Features", as used in this chapter, shall mean any facility, improvement, development, property or interest therein, made, constructed, or acquired for purpose of controlling, or protecting life or property from, any storm, waste, flood *or surplus waters wherever located within the county*, and shall include but not be limited to the improvements and authority described in RCW 86.12.020 and Chapters 86.13 and 86.15 RCW.

Former SCC 25.02.080 (1983) (emphasis added). The emphasized text above illustrates the breadth of the meaning of "stormwater" in the SCC. A "surplus" is "the amount that remains when use or need is satisfied." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2301 (2002). If this provision were meant to apply only to "surface water" as opposed to "groundwater," then it would not have to include the additional references to "storm," "surplus," and other waters "wherever located." Under the SCC, then, a pipe that controls excess water qualifies as a stormwater facility wherever that water is located, including underground.

rainwater and leaking municipal storm drains from upslope properties. In making recommendations to the developer, the supervising geotechnical engineer referred to an "efficient comprehensive drainage system" to deal with wet site conditions from all sources. Thus, regardless of whether one can conceptually distinguish "stormwater" from "groundwater," the fact remains that the disputed interceptor pipe would be collecting both, and the City fails to cite any evidence in the record showing that any of the individuals involved in the initial development of Crystal Ridge contemplated such a distinction.

C. Drainage Disclosure

The "Drainage Disclosure" dated November 9, 1987 does not alter this result. That document requires subsequent owners of the *individual lots* in Crystal Ridge to be notified that "[s]ubstantial surface and subsurface drainage controls have been necessary in the development of the subject property and that special and/or extraordinary drainage controls may be necessary on individual lots." The City urges us to read this disclosure as warning subsequent Crystal Ridge homeowners that they were responsible, as members of the HOA, for maintaining the interceptor pipe in Tract 999. This is incorrect. The disclosure notifies individual future homeowners that they may have to take extraordinary drainage precautions *on their own lots* to *supplement* existing drainage facilities, not that they were responsible for maintaining drainage facilities that had already been placed. As with the original plat, adopting the City's interpretation of the disclosure document would both run counter to the

13

document's plain meaning and read Tract 999's drainage easement out of the Crystal Ridge plat.[10]

### D. The Snohomish County Code

The City also notes that the relevant portions of the SCC list several prerequisites that must be met before the County accepts responsibility for maintaining a drainage system and that those requirements were never met at Crystal Ridge. But the SCC also mandates additional steps if the County is *not* going to maintain a drainage system,[11] and the record contains no evidence suggesting that those requirements were met either. Thus, the fact that additional requirements appear in the SCC is not helpful in determining the issue before us.

### E. Conclusion on Plat Interpretation

The County accepted, via the signatures of several of its public officials including the director of public works, that "drainage easements designated on this plat are hereby reserved for and granted to Snohomish County for the right of ingress and egress for the purpose of maintaining and operating stormwater facilities." Regardless of whether we limit our inquiry to the contents of the plat or examine

---

[10] The City's interpretation of the drainage disclosure also runs counter to RCW 58.17.165, which provides that dedications "shown on the face of the plat shall be considered to all intents and purposes as a quitclaim deed . . . ." The developer of Crystal Ridge thus quitclaimed maintenance rights to the easement contained within Tract 999, and the drainage disclosure that does not purport to alter the parties' rights and responsibilities cannot suffice to undo that quitclaim.

[11] Specifically, the former SCC required the developer applicant to make arrangements with the property owners for assumption of maintenance within two years and the county director of the department of public works must have approved those arrangements. Former SCC 24.28.080 (1983).

extrinsic evidence, the only reasonable interpretation of the plat is that the drainage easement in Tract 999 includes the interceptor pipe.[12]

## II. The Washington Constitution

The City argues that were it required to maintain the interceptor pipe, the resulting expenditure would constitute the gifting of public money to private parties in violation of article VIII, section 7 of the Washington Constitution. We will not reach the merits of this argument because the City failed to raise it prior to filing its petition for review. The City did not mention article VIII, section 7 in its cross motion for summary judgment before the superior court. Indeed, aside from a single passing remark in its opening Court of Appeals brief, the City never once raised this issue before either the superior court or the Court of Appeals. This court generally does not consider issues,

---

[12] The Washington State Association of Municipal Attorneys (WSAMA) filed an amicus brief warning of a parade of horribles that would follow if we affirm the Court of Appeals decision. According to WSAMA, if the City "becomes responsible for a groundwater facility over which neither it nor Snohomish County had direct knowledge and did not expressly accept—just because it exists—that same thing could happen to any county, city or town." Amicus Br. of WSAMA in Supp. of City of Bothell at 1-2.

These concerns are misplaced. The City is not responsible for maintaining the interceptor pipe "just because it exists;" they are responsible for maintaining it because that is the only reasonable interpretation of the disputed plat. The plat clearly shows a drainage easement within Tract 999, and the record contains no indication that Tract 999 contains *any* drainage facility of *any* type aside from the interceptor pipe and the A.W.D. sanitary sewer pipe. If we were to exclude the interceptor pipe from the scope of the easement, we would effectively be reading the "drainage easement" out of the plat. Moreover, the City—as successor in interest to the County—did have knowledge of the interceptor pipe through the record before the hearing examiner. Finally, our holding is narrower than WSAMA fears. We do not hold that plats cannot distinguish between stormwater and groundwater facilities; we simply hold that this particular plat did not make that distinction and that reading such a distinction into this plat would be inappropriate under the particular circumstances of this case.

even constitutional ones, raised first in a petition for review, *State v. Benn*, 161 Wn.2d 256, 262 n.1, 165 P.3d 1232 (2007), and we decline to do so now.

Before it sought review with this court, the City's only reference to article VIII, section 7 appeared in the section of its Court of Appeals brief discussing whether a common-law dedication of the pipe occurred. The City argued that because it never accepted a common-law dedication of the pipe, the City never assumed responsibility for the pipe's maintenance. The City referenced article VIII, section 7 not as part of an independent argument, but only as support for its assertion that because the interceptor pipe benefited private parties, the City could never have accepted a dedication of the pipe under common law.[13] In this context, the City's offhand remark cannot reasonably be construed as raising the issue before the Court of Appeals— and indeed, the Court of Appeals did not address article VIII, section 7 in its opinion.

"'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986) (*quoting United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir. 1970)). Because the City failed to raise this issue below, we decline to address it now.[14]

---

[13] As noted above, the City's common-law-dedication argument was itself a non sequitur; respondents never raised common-law dedication because the drainage easement satisfied the statutory dedication requirements.

[14] The court grants in part and denies in part the City's "Motion to Strike Portions of Respondents' Supplemental Brief and New Document Attached as an Exhibit to Respondents' Supplemental Brief." The motion is granted with respect to striking Exhibit A and references to it in respondents' supplemental brief, as respondents provided no justification for failing to submit this document to the trial court so that it would be part of the record on appeal. The motion is denied in all other respects. The City challenges several statements that it characterizes as "factual assertions that are not supported by any citation to the record." But viewed in context, each of the challenged statements is either a proper inference or argument based on factual assertions that respondents did, in fact, support with citations to the record.

CONCLUSION

For the reasons stated above, we agree with the superior court and the Court of Appeals that the City is responsible for maintaining the interceptor pipe. We therefore affirm.

---

We construe the City's second motion to strike, challenging portions of respondents' answer to the City's first motion to strike, as a reply in support of its first motion to strike. The challenged portions of the respondents' answer played no role in our determination of the merits of this case, and we need not address it. To the extent the second motion to strike is considered pending, it is denied.

_(signature)_ Wiggins, J.

WE CONCUR.

_(signature)_

_(signature)_ Fairhurst, J.

_(signature)_ Stephens, J.

_(signature)_ González, J.

No. 89533-3

GORDON McCLOUD, J. (dissenting)—The developer here dedicated a 25-foot easement to Snohomish County (County) "for the right of ingress and egress for the purpose of maintaining and operating stormwater facilities." Clerk's Papers (CP) at 46-48 (emphasis omitted). The city of Bothell (City) accepted this dedication, along with its obligations. CP at 45. The question that we must resolve here is the scope of this dedication "of ingress and egress": specifically, whether or not this dedication included an obligation to maintain the interceptor pipe that the hearing examiner in 1984 required the developer to install 11 feet underground as a condition of development.

The majority concludes as a matter of law that the scope of this dedication to the City includes the obligation to maintain the interceptor pipe. I agree with the majority that the plat language unambiguously gives the City access to whatever the easement contains. But I disagree with the majority's conclusion that the plat language and undisputed evidence unambiguously demonstrate that the developer

1

intended to impose a duty on the City to maintain the interceptor pipe at issue and that that is what the City accepted. Instead, neither the plat nor any other evidence shows that the City at any time affirmatively assumed a duty to maintain this pipe, and I find no basis to infer such a duty. I would therefore reverse. I respectfully dissent.

I.     STANDARD OF REVIEW

We review a summary judgment order de novo. *LaCoursiere v. Camwest Dev., Inc.*, 181 Wn.2d 734, 740, 339 P.3d 963 (2014). Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*

II.     RULES GOVERNING CONTRACT AND PLAT INTERPRETATION

A statutory dedication operates by way of grant. *Kiely v. Graves*, 173 Wn.2d 926, 932, 271 P.3d 226 (2012). A dedication of an easement occurs when the grant specifies the dedication for a particular purpose. *Id.* In Washington, RCW 58.08.015 governs a statutory dedication. This provision states,

> Every donation or grant to the public, or to any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on the plat of the town, or wherein such donation or grant may have been made, shall be

considered, to all intents and purposes, as a quitclaim deed to the said donee or donees, grantee or grantees, for his, her or their use, for the purposes intended by the donor or donors, grantor or grantors, as aforesaid.

RCW 58.08.015.

Matters of plat interpretation depend on the donor's intent. *See Roeder Co. v. Burlington N., Inc.*, 105 Wn.2d 269, 273, 714 P.2d 1170 (1986). The court generally determines donor's intent from the face of the dedication; Washington courts do not consider extrinsic evidence to determine donor intent if a plat's plain language is unambiguous. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003) (citing *Zobrist v. Culp*, 95 Wn.2d 556, 560, 627 P.2d 1308 (1981)). If the plat's language is ambiguous, however, then the court may consider extrinsic evidence to ascertain the parties' intent at the time that they executed the plat: "If ambiguity exists, extrinsic evidence is allowed to show the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions." *Id.* (citing *City of Seattle v. Nazarenus*, 60 Wn.2d 657, 665, 374 P.2d 1014 (1962)).

III. THE PLAT'S PLAIN LANGUAGE IMPOSES NO DUTY TO MAINTAIN THE INTERCEPTOR PIPE

3

The homeowners sought a declaratory judgment that based on the recorded plat's plain language, the City, "'upon annexing the area of the Crystal Ridge development from Snohomish County, assumed responsibility for inspecting and maintaining the drainage system, including the interceptor trench between the Brentwood Heights and Crystal Ridge developments.'" CP at 637, 837. They prevailed in the trial court and on appeal. *Crystal Ridge Homeowners Ass'n v. City of Bothell*, noted at 175 Wn. App. 1047 (2013).

The majority affirms, reasoning that "no ambiguity surrounds the easement in question," majority at 8, and holding that "the only reasonable interpretation of the Crystal Ridge plat is that the County—and therefore the City—assumed responsibility for maintaining the drainage pipe." Majority at 3. The heart of the majority's analysis is "[b]ecause the County assumed responsibility for maintaining the Tract 999 drainage easement, it necessarily follows that if the interceptor pipe falls within the scope of that easement, the City—as successor in interest of the County—has responsibility for maintaining the interceptor pipe." Majority at 9.

I agree with the majority's premises but not with its conclusion. To be sure, there is no dispute that the interceptor pipe is located within the 25-foot easement. CP at 324. And, surely, the plat states, "'DRAINAGE EASEMENTS

4

DESIGNATED ON THIS PLAT ARE HEREBY RESERVED FOR AND GRANTED TO SNOHOMISH COUNTY FOR THE RIGHT OF INGRESS AND EGRESS FOR THE PURPOSE OF MAINTAINING AND OPERATING STORMWATER FACILITIES.'" CP at 640.

But all that this language unambiguously shows is that when the City accepted the dedication, it received "the right of ingress and egress," meaning the right to *access* stormwater facilities located within all the easements on the plat. "Ingress and egress" is followed by the language "for the purpose of maintaining and operating stormwater facilities." That latter phrase is descriptive, not prescriptive; that is, it describes the scope of the City's right but imposes no additional duty. "'[W]hen the intention of the owner to dedicate is clear, manifest, and unequivocal, . . . it becomes effective for that purpose.'" *City of Spokane v. Catholic Bishop of Spokane*, 33 Wn.2d 496, 503, 206 P.2d 277 (1949) (quoting *Corning v. Aldo*, 185 Wash. 570, 576, 55 P.2d 1093 (1936)). Although the holder of the easement—the City—has a duty to maintain the easement, its duty applies only to maintaining the easement for the purpose for which it was granted. Thus, because the easement addresses only access, the City's duty, based on the plat's plain language, extends only to maintaining a right of access. The plat on its own does not unambiguously place a duty to maintain that interceptor pipe on the City.

5

Instead, it is silent about the duty to maintain that pipe. Therefore, summary judgment in favor of the homeowners based on the plat language was improper.

The majority seems to assume that access would be irrelevant if the City did not also have a duty to maintain. Majority at 9. That might be true. But it does not necessarily follow that we can therefore infer from the plat itself, as opposed to some other source, the duty to maintain. Instead, as discussed in Part IV below, there were specific steps that the law prescribes to impose such a duty—steps that no party took.

IV.    THE UNDISPUTED EVIDENCE SUPPORTS SUMMARY JUDGMENT IN FAVOR OF THE CITY, NOT THE HOMEOWNERS

Because the plat language does not unambiguously answer the question of whether the donor intended to convey, and the County intended to accept, the duty to maintain the interceptor pipe, we may consider extrinsic evidence about "the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions." *Sunnyside Valley*, 149 Wn.2d at 880 (citing *Nazarenus*, 60 Wn.2d at 665).

The City points to the following evidence extrinsic to the plat to try to show that the homeowners, not the City, are responsible for maintaining the interceptor pipe:

> [T]he trench is not defined as a public system in the City's (or the
> County's) codes, rules and regulations; the City has never in the past
> maintained this private structure/system (nor did the County when the
> Property was under Snohomish County's jurisdiction); nor would it
> benefit the public to do so as the interceptor trench only aids private
> property.

CP at 315. We address each in turn.

To support its first contention, the City points to the plat's language and

argues that "the interceptor trench does not meet the definition of 'stormwater

facility' under any applicable code or regulation." CP at 324. But this argument

depends on reading the plat's language to impose on the City an obligation to

maintain "stormwater facilities." As discussed above, the plat's language imposes

no duty to maintain. Thus, this argument is not sufficient to support summary

judgment in the City's favor.

To support the City's second argument, that it never maintained or inspected

the pipe, the City cites the "Drainage Disclosure" and also the requirements in the

former Snohomish County Code (SCC) for assuming responsibility for maintaining

the interceptor pipe.[1] CP at 326-31, 333.

---

[1] The City also cites the County's "1979 Drainage Procedures Manual,"
which cites the SCC. CP at 329-30.

7

I agree with the majority that the "Drainage Disclosure" imposes no duty on the homeowners to maintain the interceptor pipe. Majority at 13. But I disagree with the majority's application of the SCC.

Both state law and the SCC contain requirements for a dedication. *See* RCW 58.17.020(3); former SCC 24.28.040 (1983). We apply the ordinances and law in effect at the time that a party files an application for a preliminary plat.[2] *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 483, 61 P.3d 1141 (2003) (citing *Friends of the Law v. King County*, 123 Wn.2d 518, 522, 869 P.2d 1056 (1994)). As this court stated in *HJS Development*, local governments are "solely responsible for preliminary plat and final plat approvals, and may adopt regulations or condition such approvals to mitigate problems caused by a development." *Id.* at 481 & n.127, 61 P.3d 1141 (2003). Local governments may supplement state platting laws for the public health, safety, and welfare.[3] *Id.* at 481 n.128.

As the majority explains, the parties do not dispute that the County accepted a statutory dedication of the easement. Majority at 7. I agree with the majority

_____

[2] Accordingly, the City's argument in its cross motion for summary judgment that "under the City's current codes, the interceptor trench is not the kind of pipe that the City would take over for maintenance responsibility" is not helpful. CP at 338.

[3] The parties do not challenge the former SCC's requirements for plat dedication.

that no evidence shows that the County, at the time of dedication, fulfilled either the requirements to *accept* responsibility to maintain the interceptor pipe or the requirements to *decline* responsibility to maintain the pipe. Majority at 14; *see* former SCC 24.28.040, .080 (1983). And, as discussed above, the recorded plat does not show that the City accepted the pipe as its property as part of the dedication—it accepted only a right of access. None of the evidence extrinsic to the plat that the City cites demonstrates conclusively that it intended, or did not intend, to accept responsibility for maintaining the pipe as part of the dedication.

The majority cites former SCC 24.28.040 and Trepainer's declaration to conclude that because private maintenance of the pipe "would likely be inadequate and undesirable," the drainage facilities were dedicated to the County. Majority at 10-11. Once again, I agree with the majority's premise—here, that the City submitted evidence showing that private maintenance would be a bad policy—but not with its conclusion that we can therefore infer a dedication to the City from a silent plat.

The majority's analysis of this issue turns on the notion that former SCC 24.28.040 requires County maintenance where private maintenance would likely be inadequate. Former SCC 24.28.040 does say that, but only as an introduction to

the mandatory prerequisites to the County undertaking that responsibility. Former

SCC 24.28.040, in its entirety, states,

> Drainage Facilities shall be dedicated to the County where the Director determines that such facilities either are appropriately a part of a county maintained regional system or are unlikely to be adequately maintained privately.
>
> The County shall assume the operation and maintenance responsibility of retention/detention or other drainage conveyance systems and drainage treatment/abatement facilities proposed for county maintenance in an approved detailed drainage plan after the expiration of the two (2) year maintenance period if:
>
> (1) All of the requirements of Chapter 24.20 have been fully complied with; and
>
> (2) The facilities have been inspected and approved by the Director after two (2) years of operation in accordance with the Procedures Manual; and
>
> (3) All necessary easements entitling the County to properly operate and maintain the facility have been conveyed to the County and recorded with the Snohomish County Auditor; and
>
> (4) The applicant has supplied to the County an accounting of maintenance expenses for the permanent drainage facilities up to the end of the two year period.
>
> (5) The applicant pays the County an Operation and Maintenance assessment based on a ten (10) year prorated cost to operate and maintain the permanent drainage facilities constructed by the applicant.

CP at 687.

We apply the same rules of statutory construction "to municipal ordinances

[that we apply] to state statutes." *World Wide Video, Inc. v. City of Tukwila*, 117

Wn.2d 382, 392, 816 P.2d 18 (1991) (quoting *City of Spokane v. Fischer*, 110

Wn.2d 541, 542, 754 P.2d 1241 (1988)). To interpret a statutory provision's plain

meaning, we look to the provision's text, in addition to "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002)).

The majority focuses on the first paragraph of former SCC 24.28.040 to the exclusion of the rest of the provision. That first paragraph on its own, however, lacks operative force. A complete reading of SCC 24.28.040(1) through (5) shows that the prerequisites to accepting a dedication are mandatory—the County assumes that responsibility only "if" those prerequisites are met. And they all must be met—all but number five are joined with the conjunction "and." As stated above, no evidence shows that the City met five, or even four, of the prerequisites to assuming the responsibility to operate and maintain the drainage pipe. When we read former SCC 24.28.040 in its entirety, the fact that the homeowners could not adequately maintain the interceptor pipe, on its own, does not support summary judgment in favor of the homeowners.

For the City's third argument, that the pipe aids only private property owners, the City cites a 1977 City ordinance stating, "'<u>The City will not assume responsibility for maintenance of retention/detention facilities on private</u>

property.'" CP at 337, 567 (emphasis omitted). But, as the City acknowledges, the pipe is not a retention/detention facility and this ordinance does not address drainage facilities. CP at 337. Therefore, it provides no support for summary judgment in the City's favor.

In *Kiely*, we explained that absent of intent an dedicate a particular property interest, we would not imply meaning from the face of the plat:

> Because solid lines separate the alley from the properties, it is possible the Powers intended to convey to the public the alley as an entirely distinct property interest. . . . Yet, the plat neither assigns meaning to the solid lines, nor includes anything but solid lines on the entire plat. Moreover, the Graves fail to direct the court as to how the plat lines should be interpreted. Absent such argument, we decline to imply meaning into the plat's use of lines.

173 Wn.2d at 934-35.

Here, the face of the plat shows no intent to dedicate a property interest in the contents of the drainage easement to the County or the City for maintenance purposes. And none of the evidence presented clearly leads us to interpret the plat to impose a duty on the City to maintain the interceptor pipe. The extrinsic evidence presented relies primarily on the plat's reference to "stormwater facilities" as opposed to "groundwater facilities." This evidence is unconvincing because the plat's plain language indicates that the easement's scope does not include the duty to maintain the pipe. And the County met neither of the SCC's

requirements to accept or not to accept responsibility. Absent evidence demonstrating that the dedication included the duty to maintain the easement's contents, this court should decline to imply such meaning. Thus, summary judgment in favor of the homeowners was improper; instead, summary judgment in the City's favor was appropriate.

V.   CONCLUSION

As matter of law, absent an express dedication to maintain the contents of the drainage easement—or any other action by the municipality to accept the duty to maintain the contents—we cannot impose a duty on the City to operate and maintain what is inside the drainage easement. Because the trial court should have denied the homeowners' motion for summary judgment and granted the City's motion for summary judgment, I would reverse the Court of Appeals. I therefore respectfully dissent.

Gordon McCloud, J.

Wiggins, J.

Madsen, C.J.

14